THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN GASPAR, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>TURN TECHNOLOGIES, INC., a Delaware Corporation, and RAHIER RAHMAN, and his marital community,<br><br>                Defendants. | No. 2:23-cv-01274-TSZ<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br>JURY TRIAL REQUESTED |

FIRST AMENDED COMPLAINT FOR DAMAGES
Page i

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

# I. NATURE OF THE ACTION

1. This is an action for declaratory judgment, equitable relief, and monetary damages instituted to secure the protection of and redress the deprivation of rights secured through the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"); the Washington Fair Credit Reporting Act, RCW 19.182, *et seq.* ("WFCRA"); the Washington Consumer Protection Act, RCW 19.86, *et seq.* ("CPA"); a common law breach of contract claim and wrongful withholding of wages under RCW 49.48 *et seq.* and RCW 49.52 *et seq.*; and Washington's tort of wrongful discharge in violation of public policy.

2. Plaintiff Brian Gaspar ("Plaintiff") alleges that Defendant Turn Technologies, Inc., and Defendant and CEO Rahier Rahman ("Defendants") retaliated against him for opposing illegal activity that includes Defendants running background checks on employees without their consent in violation of the FCRA and WFCRA. Defendants' retaliation culminated in Plaintiff's wrongful discharge in violation of public policy. Plaintiff further alleges that Defendants ran a background check on Plaintiff without his consent in violation of the FCRA and WFCRA, and that Defendant Turn breached its contract with Plaintiff and Defendants wrongfully withheld wages.

3. Plaintiff seeks monetary and injunctive relief, including pecuniary and non-pecuniary damages, compensatory damages, punitive damages, and attorney's fees and costs to the fullest extent allowed by law.

# II. JURISDICTION, VENUE, AND PARTIES

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 since Plaintiff alleges claims that comprise a federal question.

5. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue of this Court is invoked under 28 U.S.C. § 1391.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 1

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

7. Plaintiff Brian Gaspar is a citizen of Washington State and a resident of King County, Washington.

8. Defendant Turn Technologies is a Delaware corporation and a Washington employer, doing business in King County, Washington.

9. At all relevant times, Defendant Turn Technologies was an employer engaged in an industry affecting commerce.

10. Defendant and CEO of Turn Technologies, Rahier Rahman, upon knowledge and belief resides in Cook County, Illinois.

11. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the jurisdiction of the Federal District Court for the Western District of Washington at Seattle.

12. At all relevant times, Defendants employed Plaintiff in King County, Washington.

### III. STATEMENT OF CLAIMS

13. The preceding paragraphs 1 through 12 are re-alleged and hereby incorporated by reference.

14. Mr. Gaspar was hired by Defendants on July 12, 2021, as Vice President of Product reporting to the CEO, Defendant Rahman.

15. A primary part of what Defendant Turn Technologies does as an entity is employment screening. It acts as an intermediary between employers who want background checks on job applicants, employees, and independent contractors with third-party venders who actually perform these background checks. Turn does not perform the background checks itself, but instead outsources the work. In that way, Turn acts as an "intermediary" or "broker."

16. These background checks are legally deemed "consumer reports" under Washington (WFCRA) and Federal law (FCRA).

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 2

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

17. In his offer letter, Mr. Gaspar was promised a $65,000 raise "upon a successful closing of the Series A."

18. Upon information and belief, Mr. Gaspar believes the Series A closed after his hire.

19. Mr. Gaspar performed his job well and was promoted twice in less than a year and a half.

20. On September 1, 2021, Mr. Gaspar was promoted to Head of Product Development.

21. On March 1, 2022, Mr. Gaspar was promoted to Chief Product Officer.

22. Mr. Gaspar's role as the Chief Product Officer included ensuring compliance with state and federal regulations, such as the Fair Credit Reporting Act.

23. In July 2022, in consideration for the two promotions and the additional responsibilities, Defendant Turn and Defendant CEO Rahier Rahman agreed to pay Mr. Gaspar 3.5% stock of Turn Technologies effective immediately.

24. In July 2022, in consideration for the two promotions, Defendant Rahman also agreed to pay Mr. Gaspar a $50,000 bonus.

25. The $50,000 bonus was to be paid upon additional funding by investors.

26. On or around August 31, 2022, Ayleen Adler, VP of People, confirmed that Mr. Gaspar was to receive the $50,000 bonus.

27. On or around October 31, 2022, Ross Kimbel, Board Member, confirmed that the Board approved the $50,000 bonus and the award of 3.5% shares in Defendant Turn Technologies stock.

28. In this same meeting, Mr. Kimbel showed Mr. Gaspar an internal "Capital Table" showing that the shares were already allocated to Mr. Gaspar.

29. Mr. Kimbel told Mr. Gaspar that Defendant Turn had received its pledge for the next round of funding at the end of 2022.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 3

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

30. At no point was Mr. Gaspar informed that his $50,000 bonus was contingent on him remaining employed when the company got funded.

31. On November 7, 2022, an employee who reported to Mr. Gaspar, Trent Sherrell, Director of Product Management, informed Mr. Gaspar that CEO Rahman had directed a non-consented consumer report (criminal, employment, and motor vehicle checks) on an employee.

32. These checks were "consumer reports" for the purposes of the FCRA and WFCRA.

33. Defendant CEO Rahier Rahman had directed this report be run in a manner which Mr. Gaspar believed was illegal, violating the federal credit reporting act, FCRA.

34. On November 7, 2022, after Mr. Gaspar learned about this illegality, he became quite concerned. He made further inquiries into Mr. Sherrell's claims. Mr. Gaspar did so because he was concerned with Defendants' potential legal exposure and his desire to stop what he reasonably believed violated the law.

35. Upon further inquiry, Mr. Gaspar learned that Defendant Rahman had carried out other consumer reports without securing consent from the individuals as required by law.

36. These checks were performed by third party Credit Reporting Agencies (CRAs).

37. The third-party CRAs procured the consumer reports for Defendants.

38. These consumer reports were conducted in violation of the WFCRA and FCRA.

39. These reports were paid for, making them occur in "trade or commerce" under the CPA.

40. These reports required the disclosure of the individuals' social security numbers to be run by third party CRAs.

41. These reports violated these individuals privacy including but not limited to using their social security numbers without consent or under a false pretense.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 4

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

42. None of the individuals on which Defendants had run reports received copies of those reports as required by fair credit reporting laws. Additionally, no notice or disclosure was made to the individuals about the reports.

43. Defendants used one of these consumer reports to fire an employee.

44. At least one of these reports violated New York's Fair Chance Act (FCA) N.Y.C. Administrative Code § 8-107(11-a), because that employee lived in New York and Defendants did not obtain consent for the check nor disclose the report to them.

45. At least one of these reports violated the FCRA § 1681q because they were obtained under false pretenses.

46. A violation of § 1681q is a fine under Title 18, imprisonment for not more than 2 years, or both.

47. Since Defendants actions were a violation of the WFCRA, they were considered "unfair or deceptive acts" under the CPA.

48. Mr. Gaspar also learned that Defendants had performed an illegal background check on him on December 16, 2021, which included third parties furnishing consumer reports to Defendants.

49. Mr. Gaspar never consented to Defendants' performing a background check, meaning Defendants' procurement of the consumer reports without consent, in violation of 15 U.S.C. § 1681b (b)(2)(A).

50. Defendants never disclosed the report to Mr. Gaspar, in violation of 15 U.S.C. § 1681b (b)(2)(A).

51. Defendant Turn's offer letter specifically required Mr. Gaspar's consent before it could run a background check on him.

52. Defendants did not provide Mr. Gaspar with a copy of the consumer reports they procured on him, in violation of the FCRA and WFCRA, and an injury under the CPA.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 5

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

53. To Mr. Gaspar's knowledge, Defendants did not provide copies of the consumer reports to other individuals.

54. Armed with additional evidence, Mr. Gaspar reported the illegality to Mr. Gaspar reported to Defendant Rahman's Chief of Staff, Alaina Cafaro. He detailed his concerns about the consumer reports and Defendants practices that he believed violated state and federal credit reporting laws. He did this on or around November 18, 2022.

55. Mr. Gaspar notified Ms. Cafaro that he was in the process of investigating these practices. Mr. Gaspar further reported that he had uncovered at least two non-consented criminal, employment, and motor vehicle checks Defendants had procured in violation of several laws including FCRA.

56. Soon after Mr. Gaspar reported this misconduct and illegality to Defendants Chief of Staff, Defendants began retaliating against him.

57. Defendants began retaliating against Mr. Gaspar by redirecting Mr. Gaspar's work to other members of Defendants' staff.

58. Additionally, Defendant Rahman began avoiding Mr. Gaspar, despite his job requiring that he reported directly to him and had traditionally worked closely with him.

59. This retaliatory treatment occurred after Mr. Gaspar reported the illegality and misconduct to Defendants' Chief of Staff.

60. This retaliation includes, but is not limited to, the following conduct:

   a) On November 21, 2022, Defendant Rahman began sending direct communications to Marketing and Product for metrics on Mr. Gaspar's responsibility areas and did not include Mr. Gaspar in said communications. In the past, Defendant Rahman went directly to Mr. Gaspar, as Chief Product Officer, for any issues within product development.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 6

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

b) On November 23, 2022, Defendant Rahman gave direct instructions to Mr. Gaspar's direct report Xan Thomas, Turn Sales, to close a sales deal Mr. Gaspar was leading. Typically, when Mr. Gaspar led a sales deal, he would close it.

61. On November 23, 2022, Mr. Gaspar confronted Defendant Rahman about the changes in his employment including the disparate treatment mentioned herein.

62. Defendant Rahman informed Mr. Gaspar that he knew about Mr. Gaspar's investigation into Defendants' consumer reporting practices. Defendant Rahman also stated that if Mr. Gaspar did not like being employed by Defendants, he should quit.

63. Mr. Gaspar told Defendant Rahman about his findings of illegality, misconduct, and the potential for legal liability for the company as well as the need to fix the situation now and not wait to do it in the future.

64. Defendant Rahman showed no remorse or gave no indication he would not continue to violate the law and put the company in legal jeopardy.

65. Defendant Rahman stated that Mr. Gaspar would be fired if he continued with his investigation of Defendants' consumer reporting practices or if he informed anybody, specifically the board of directors, of his findings.

66. Given the fact that Defendant Rahman refused to take any action to correct these illegal practices, Mr. Gaspar decided he needed to escalate the matter to the CEO's only supervisors, the Board of Directors.

67. On November 27, 2022, at 6:19 p.m. Mr. Gaspar advised the Board of Directors by email of what he said, "seems to be a violation of the Fair Credit Reporting Act (FCRA), Turn has run background checks on employees and at least one outside individual without notice and their prior consent." He goes on to outline how the Ayleen Adler (VP of HR) conducted a background check (a consumer report) despite the employee in question denying consent. He outlines in detail the deficiencies and violations that occurred under FCRA.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 7

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

68. Mr. Gaspar further informed the Board of his belief that, by reporting Defendants' misconduct, Defendant and CEO Rahman had threatened to fire him, and specifically if he reported these violations to the board. But he stated he felt he had an obligation under the law to report what he believed was a violation of the FCRA.

69. On November 28, 2022, at 6:30 a.m., around twelve hours after Mr. Gaspar blew the whistle on Defendants, Defendant Rahman terminated his employment.

70. The only explanation provided by Defendant Rahman for Mr. Gaspar's sudden termination is that his employment was "at-will."

71. Prior to Mr. Gaspar's termination, he received no write-ups or written discipline.

72. On or around the same day Defendants fired Mr. Gaspar, Defendants fired Mr. Gaspar's sister-in-law, Nandina Prashad, without providing or having any legitimate reason or justification.

73. Defendant Turn received its "next round of funding" in or around December 2022.

74. Defendant Turn never provided Mr. Gaspar with the bonus that was agreed to and approved. Defendants never provided Mr. Gaspar with the stock grant he earned and had been allocated to him.

75. Plaintiff fully fulfilled all the obligations necessary to receive the bonus and stock grant Defendants agreed to give him in exchange.

76. All of Defendant Rahman's actions were done on behalf of Defendant Turn.

77. Defendants willfully and recklessly violated the FCRA.

78. Defendants willfully and recklessly interfered with Mr. Gaspar's rights under the FCRA.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 8

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

79. Upon information and belief, Defendants did not research the FCRA, interpret the FCRA, or adopt an interpretation of the FCRA before procuring background checks in violation of the FCRA.

80. Defendants fired Mr. Gaspar for investigating potentially illegal activity and internally reporting that activity to Defendants. This was a substantial factor motivating Defendants to terminate Plaintiff's employment.

81. Mr. Gaspar actions furthered numerous public policies by opposing unlawful consumer reports including opposing unlawful employment practices, including laws prohibiting unfair trade practices, and protecting consumer privacy, and individual privacy, reputation, and character, and protecting whistleblowers from retaliation.

82. Washington has codified its public policy of prohibiting unfair trade practices through the WFCRA, Credit Protection Act (CPA).

83. Under Washington's Consumer Protection Act, running consumer reports on people without their consent is a per se violation. Thus, Defendants violated Mr. Gaspar's rights under the Consumer Protection Act.

84. Washington has also codified its public policy of protecting consumer privacy in its Constitution, the WFCRA, and CPA. The right of privacy is also embodied in the federal constitution. HIPAA also protects privacy and the use of private information without consent, and it is in full force and effect in Washington and was recently expanded by Washington law.

85. Washington has codified its public policy of protecting consumer reputation and character in the WFCRA and CPA.

86. Defendants' wrongful termination of Mr. Gaspar caused Mr. Gaspar to lose wages in violation of RCW 49.52 *et seq*. and RCW 49.48 *et seq*. Defendant Rahman is individually liable as an agent, officer, or vice principal under 49.52.050 and 49.52.070 for withholding wages owed to Plaintiff as is Defendant Turn.

87. The unlawful employment practices complained of in the above paragraphs

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 9

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

were intentional.

88. The unlawful employment practices complained of in the above paragraphs were done with malice and/or with reckless indifference to Mr. Gaspar's rights as protected by state and federal laws, including WFCRA and the FCRA.

89. Defendants engaged in unlawful employment practices against Mr. Gaspar including retaliated against him for engaging in protected activity furthering Washington public policies and whistleblowing against Defendants conduct that violates firmly violates public policy.

90. While employed by Defendants, Mr. Gaspar opposed the practice of unlawful background checks run against Defendants' employees and individuals without their consent in violation of the WFCRA and FCRA.

91. Defendants retaliated and took adverse actions against Mr. Gaspar for his protected activity. These adverse actions include wrongfully terminating Mr. Gaspar's employment for his whistleblowing activity in violation of firmly established public policies and violated Washington's tort of wrongful discharge in violation of public policy.

92. As a result of Defendants' conduct, Mr. Gaspar has suffered and continues to suffer economic losses and non-pecuniary losses and other damages prayed for herein.

## IV. RESERVATION OF RIGHTS

93. Plaintiff reserves the right to add, revise, or withdraw any claims, or add Parties, including potential successor entities, as information is obtained through the course of litigation.

94. The actions stated above are not and cannot comprise an exhaustive or complete list of Defendants' wrongful acts, adverse actions, or hostile work environment. This complaint does not include each and every fact or legal theory that supports Plaintiff's claims or damages that may be presented at trial.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 10

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

## V. REQUEST FOR RELIEF

WHEREAS Plaintiff respectfully requests that this court:

A.     Grant a permanent injunction enjoining Defendants, its officers, successors, agents, assigns, and all persons in active concert or participation with them, from engaging in any other unlawful employment practices.

B.     Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendants to make Plaintiff whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.     Order Defendants to make Plaintiff whole by providing compensation for past pecuniary losses resulting from the unlawful employment practices described in the above paragraphs, including out-of-pocket expenses, in amounts to be determined at trial, including but not limited to the damages provided for by RCW 49.48 *et seq*. and under RCW 49.52 *et seq*.

E.     Order Defendants to make Plaintiff whole by providing compensation for past non-pecuniary losses resulting from the practices complained of in the above paragraphs, including without limitation, emotional pain, suffering, distress, and loss of enjoyment of life, in amounts to be determined at trial.

F.     Order Defendants to pay Plaintiff punitive damages for the conduct described in the above paragraphs, in amounts to be determined at trial, to the fullest extent allowed by law.

G.     Order Defendants to make Plaintiff whole by providing relief under RCW 49.48 *et seq.*, RCW 49.52 *et seq*. or any other applicable statute, including awarding double damages.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 11

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

H.  Order Defendants to pay liquidated and/or double damages to Plaintiff as allowed under the aforementioned laws, including but not limited to back pay and other damages provided for by law.

I.  Order Defendants to pay Plaintiff for any and all tax consequences associated with the damages and cost award, including, but not limited to, tax consequences, if any related to attorney's fees.

J.  Award Plaintiff the costs of this action, including attorney fees, expert fees, and all other costs to the fullest extent allowed by law.

K.  Award Plaintiff other damages including prejudgment interest and post-judgment interest.

L.  Grant any additional or further relief as provided by law, which this Court finds appropriate, equitable, or just.

DATED this 2nd day of October 2023.

THE BLANKENSHIP LAW FIRM, PLLC

By: *s/ Scott C. G. Blankenship*
Scott C. G. Blankenship, WSBA No. 21431
Michael J. Mohan, WSBA No. 54449
Kay Fuhlman, WSBA No. 60165
The Blankenship Law Firm, PLLC
1000 Second Avenue, Suite 3250
Seattle, WA 98104
Telephone: (206) 343-2700
Facsimile: (206) 343-2704
Email:  sblankenship@blankenshiplawfirm.com
mmohan@blankenshiplawfirm.com
kfuhlman@blankenshiplawfirm.com

*Attorneys for Plaintiff*

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 12

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

# DECLARATION OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on the date and in the manner listed below I caused delivery of a true copy of the attached document to the following attorneys for Defendant(s):

| | |
|---|---|
| Charles E. Harris, II<br>ILBA # 6280169<br>Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>charris@mayerbrown.com | ☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>■ by Notification via E-filing System |
| Anna F. Cavnar<br>WSBA No. 544413<br>McCaul Ebel Nawrot & Helgren PLLC<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>acavnar@mcnaul.com | ☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>■ by Notification via E-filing System |
| Elisabeth M. Anderson<br>SBC # 6280169<br>Mayer Brown LLP<br>333 S. Grand Ave 47th Floor<br>Los Angeles, CA 90071<br>eanderson@mayerbrown.com | ☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>■ by Notification via E-filing System |
| Kyle C. Hansen<br>WSBA # 59688<br>McCaul Ebel Nawrot & Helgren PLLC<br>600 University Street, Suite 2700<br>Seattle, WA 98101<br>khansen@mcnaul.com | ☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>■ by Notification via E-filing System |

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 13

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

DATED this 2nd day of October 2023, at Seattle, Washington.

*s/ Mark Miller*
Mark Miller
Paralegal

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 14

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700