Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN GASPAR,

              Plaintiff,

   v.

TURN TECHNOLOGIES, INC., and
RAHIER RAHMAN,

              Defendants.

No. 2:23-cv-01274-TSZ

DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

NOTE ON MOTION CALENDAR:
NOVEMBER 10, 2023

ORAL ARGUMENT REQUESTED

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. ALLEGATIONS IN THE COMPLAINT ........................................................3

    A.    Turn Hires Gaspar for Its Products Team .......................................3

    B.    Turn Purportedly Runs "Illegal" Background Checks.....................3

III. LEGAL STANDARD......................................................................................5

IV. ARGUMENT ...................................................................................................6

    A.    Plaintiff's FCRA Claim Is Defective As A Matter of Law. .......................6

        1.    The FCRA is inapplicable as Plaintiff does not plausibly allege Defendants procured a consumer report from a CRA. ...........6

        2.    The FAC does not allege negligent or willful noncompliance. ...............................................................................9

            a.    The FAC does not adequately allege a negligent violation. ...............................................................................9

            b.    The FAC does not allege willful noncompliance. ..............10

    B.    Plaintiff's WFCRA Claim Is Defective As A Matter of Law....................12

        1.    The WFCRA is inapplicable under the facts alleged.....................12

        2.    Plaintiff cannot establish the required elements to bring a civil action for a violation of the WFCRA......................................13

    C.    Plaintiff Fails to Properly Allege Wrongful Discharge. ...........................14

        1.    Plaintiff has not alleged a clear public policy granting him the right to investigate potential illegal conduct............................15

        2.    Plaintiff has not, and cannot, plausibly allege that Defendants' alleged misconduct violated the letter or policy of any statute. ...............................................................................17

        3.    Any Wrongful Discharge Claim Against Rahman Fails................20

    D.    Plaintiff Fails to Allege A Breach of Contract Claim................................21

    E.    Plaintiff Fails To Allege A Claim For Withholding of Wages...................23

V. CONCLUSION................................................................................................26

VI. LCR 7(e)(2) CERTIFICATION ...................................................................26

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# TABLE OF AUTHORITIES

**Page(s)**

__Cases__

*Abbink v. Experian Info. Sols., Inc.*,
No. 19-cv-1257, 2019 WL 6838705 (C.D. Cal. Sept. 20, 2019) ........................9, 11, 12

*Alvarado v. Aurora Loan Servs.*,
No. SACV120524, 2012 WL 13019942 (C.D. Cal. July 3, 2012) ..........................12

*Amin v. Carousel Foods of Am., Inc.*,
269 A.D.2d 342 (N.Y. App. Div. 2000) ..............................................................22

*Anderson v. Trans Union, LLC*,
345 F. Supp. 2d 963 (W.D. Wis. 2004) ..............................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................5, 11

*Banga v. Experian Info. Sols., Inc.*,
No. 09-cv-4867, 2013 WL 5539690 (N.D. Cal. Sept. 30, 2013)..........................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................5

*Blackman v. Omak Sch. Dist.*,
No. 18-cv-338, 2019 WL 2396569  (E.D. Wash. June 6, 2019)....................................21

*Bott v. Rockwell Int'l*,
80 Wn. App. 326 (1996) ..............................................................................14, 20

*Brandt v. Beadle*,
No. 19-cv-6159, 2020 WL 4597262 (W.D. Wash. Aug. 11, 2020)..............................25

*Briggs v. Nova Servs.*,
166 Wn.2d 794 (2009) ..................................................................................15

*Buckner v. Atl. Plant Maint., Inc.*,
694 N.E.2d 565 (Ill. 1998)..............................................................................20

*Bye v. Augmenix, Inc.*,
No. 18-cv-1279, 2018 WL 5619029 (W.D. Wash. Oct. 30, 2018)........................ passim

*Casterlow-Bey v. eBay, Inc.*,
No. 17-cv-5687, 2017 WL 6733724 (W.D. Wash. Dec. 29, 2017) ..............................21

*Cats v. NextAlarm.com, Inc.*,
No. 08-cv-1096, 2009 WL 577590 (W.D. Wash. Mar. 5, 2009)....................................21

*Chavez-Lavagnino v. Motivation Educ. Training, Inc.*,
767 F.3d 744 (8th Cir. 2014) ..............................................................................20

*Christian v. TransPerfect Glob.*, Inc.,
No. 17-cv-5554, 2018 WL 4571674 (S.D.N.Y. Sept. 24, 2018) ....................................22

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Coulombe v. Total Renal Care Holdings, Inc.*,
   No. 06-cv-504, 2007 WL 1367601 (W.D. Wash. May 4, 2007), *aff'd*, 298 F. App'x 617
   (9th Cir. 2008) .................................................................................................................24

*Danny v. Laidlaw Transit Servs., Inc.*,
   165 Wn.2d 200 (2008) ....................................................................................................16

*De Jong v. Great Wolf Resorts, Inc.*,
   No. 19-cv-5354,  2019 WL 2725536 (W.D. Wash. July 1, 2019) .................................17

*Dicomes v. State*,
   113 Wn.2d 612 (1989) .........................................................................................15, 17, 18

*Evans v. Equifax Info. Servs., LLC*,
   No. 23-cv-237, 2023 WL 4546429 (D. Nev. July 14, 2023) .........................................10

*Farmer v. Phillips Agency, Inc.*,
   285 F.R.D. 688 (N.D. Ga. 2012) .....................................................................................8

*Farnam v. CRISTA Ministries*,
   116 Wn.2d 659 (1991) ....................................................................................................19

*Fruci & Assocs., PS v. A10 Cap. LLC*,
   510 F. Supp. 3d 962 (W.D. Wash. 2020) .......................................................................11

*Gadomski v. Patelco Credit Union*,
   No. 17-cv-695, 2020 WL 1433138 (E.D. Cal. Mar. 24, 2020) ......................................10

*Gardner v. Loomis Armored Inc.*,
   128 Wn.2d 931 (1996) ...............................................................................................14, 15

*Group14 Techs., Inc. v. Nexeon Ltd.*,
   No. 22-cv-1354, 2023 WL 3599580 (W.D. Wash. May 23, 2023) .................................5

*Guimond v. Trans Union Credit Info. Co.*,
   45 F.3d 1329 (9th Cir. 1995) ...........................................................................................9

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778 (1986) ....................................................................................................14

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) .......................................................................................25

*Huey v. Honeywell, Inc.*,
   82 F.3d 327 (9th Cir. 1996) ...........................................................................................22

*In re Est. of Lowe*,
   191 Wn. App. 216 (2015) ...............................................................................................24

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*,
   162 Wn.2d 59 (2007) .................................................................................................13, 14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
   998 F.3d 397 (9th Cir. 2021) ...........................................................................................5

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Jordan v. Viceroy Hotel Mgmt., LLC*,
   No. 21-cv-1338, 2021 WL 2400957 (N.D. Cal. June 11, 2021)......................................9

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996) ........................................................................................18

*Keystone Land & Dev. Co. v. Xerox Corp.*,
   152 Wn.2d 171 (2004)..............................................................................................21, 23

*Kinney v. Cook*,
   159 Wn.2d 837 (2007) ...................................................................................................13

*Klein v. Demopulos*,
   No. 09-cv-1342, 2010 WL 11500147 (W.D. Wash. Jan. 8, 2010) .................................25

*Kubik v. Intrexon, Inc.*,
   No. 11-cv-0972, 2011 WL 13232587 (W.D. Wash. Sept. 22, 2011) ..............................23

*Lee v. Intelius Inc.*,
   737 F.3d 1254 (9th Cir. 2013) .......................................................................................21

*Linden v. X2 Biosystems, Inc.*,
   No. 17-cv-966, 2019 WL 13240852 (W.D. Wash. Jan. 25, 2019) ................................25

*Mansapit v. Deluxe Corp.*,
   No. 19-cv-790, 2019 WL 2423423 (N.D. Cal. June 10, 2019)........................................9

*Martin v. Gonzaga Univ.*,
   191 Wn.2d 712 (2018) ...................................................................................................15

*Miklosy v. Regents of Univ. of Cal.*,
   188 P.3d 629 (Cal. 2008) ...............................................................................................20

*Minnick v. Clearwire US, LLC*,
   683 F. Supp. 2d 1179 (W.D. Wash. 2010).................................................................13, 14

*Mitchell v. Winco Foods, LLC*,
   379 F. Supp. 3d 1093 (D. Idaho 2019) ....................................................................11, 12

*Mnatsakanyan v. Goldsmith & Hull APC*,
   No. 12-cv-4358, 2013 WL 10155707 (C.D. Cal. May 14, 2013)..................................11

*Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*,
   78 Wn. App. 707 (1995) ................................................................................................21

*Robinson v. McReynolds*,
   52 Wn. App. 635 (1988) ................................................................................................13

*Roth v. CNR Prod., Inc.*,
   No. 20-cv-256, 2020 WL 2334144 (W.D. Wash. May 11, 2020) ............................21, 23

*Rubio-Delgado v. Aerotek, Inc.*,
   No. 13-cv-3105, 2015 WL 3623627 (N.D. Cal. June 10, 2015)......................................6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Safeco Ins. Co. of Am. v. Burr* ("*Safeco*"),
  551 U.S. 47 (2007) ...................................................................................................11

*Shaw v. Experian Info. Sols., Inc*.,
  891 F.3d 749 (9th Cir. 2018) .....................................................................................6

*Sheaffer v. Superior Tank Lines Nw. Div., LLC*,
  No. 19-cv-190, 2019 WL 2476636 (W.D. Wash. June 13, 2019) ...............................17

*Shelton v. Hal Hays Constr., Inc*.,
  No. 16-cv-360, 2016 WL 8904414 (C.D. Cal. July 29, 2016)......................................9

*Sherlock Invs.-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*,
  No. 20-cv-129, 2020 WL 4729066 (W.D. Wash. Apr. 7, 2020) .................................14

*Singleton v. Intellisist, Inc*.,
  No. 17-cv-1712, 2018 WL 2113973 (W.D. Wash. May 8, 2018) ................................16

*Smith v. One Nevada Credit Union*,
  No. 16-cv-2156, 2017 WL 2803169 (D. Nev. June 27, 2017) .....................................10

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) .....................................................................................11

*State v. Fjermestad*,
  114 Wn.2d 828 (1990) ...............................................................................................13

*Steele v. Extendicare Health Servs.*,
  607 F. Supp. 2d 1226 (W.D. Wash. 2009)...................................................................14

*Sugerman v. MCY Music World, Inc*.,
  158 F. Supp. 2d 316 (S.D.N.Y. 2001)..........................................................................22

*Syed v. M-I, LLC*,
  853 F.3d 492 (9th Cir. 2017) .......................................................................................6

*Tacoma Northpark, LLC v. NW, LLC*,
  123 Wn. App. 73 (2004) .............................................................................................23

*Turner v. Univ. of WA*,
  No. 05-cv-1575, 2007 WL 1655117 (W.D. Wash. June 4, 2007) ...............................19

*Walters v. Superior Tank Lines Nw. Div., LLC*,
  No. 19-cv-0191, 2019 WL 1923053 (W.D. Wash. Apr. 30, 2019) .............................25

*Warr v. Cent. Garden & Pet Co.*,
  No. 20-cv-9405, 2021 WL 6275013 (N.D. Cal. Sept. 21, 2021)..................................10

*Weinstein v. Katapult Grp., Inc*.,
  No. 21-cv-05175, 2022 WL 137633 (N.D. Cal. Jan. 14, 2022)....................................22

*White River Estates v. Hiltbruner*,
  134 Wn.2d 761 (1998) ...............................................................................................14

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page v

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Williams v. City of Bellevue*,
   No. 16-1034, 2017 WL 4387590 (W.D. Wash. Oct. 3, 2017), *aff'd*, 740 F. App'x
   148 (9th Cir. 2018) .................................................................................................16

*Wilson v. PTT, LLC*,
   351 F. Supp. 3d 1325 (W.D. Wash. 2018) ...................................................................12

*Wolf v. Carpenter, Hazlewood, Delgado & Bolen, LLP*,
   No. 22-cv-15233, 2023 WL 2552332 (9th Cir. Mar. 17, 2023) ..............................11, 12

*Wright v. JPMorgan Chase Bank,*,
   No. 16-cv-5155, 2017 WL 3623768 (E.D. Wash. Mar. 1, 2017) ....................................6

**Statutes**

12 C.F.R. § 1022.41 .........................................................................................................8

45 C.F.R. § 160.103 .......................................................................................................16

15 U.S.C. §1681 ...................................................................................................... passim

RCW § 19.182 ..................................................................................................................1

RCW § 49.46.010 ...........................................................................................................24

RCW § 49.48 ..................................................................................................................23

RCW § 49.48.010 .....................................................................................................23, 24

RCW § 49.48.082 ...........................................................................................................24

RCW § 49.52 .............................................................................................................23, 24

RCW § 49.52.050 .....................................................................................................24, 25

RCW § 49.52.070 ...........................................................................................................24

RCWA § 19.182.020 .......................................................................................6, 12, 13, 17

RCWA § 19.182.150 .......................................................................................................13

**Other Authorities**

N.Y.C. Administrative Code § 8-107 ..............................................................................19

Procure, Black's Law Dictionary (11th ed. 2019) ............................................................6

**Rules**

Federal Rule 12(b)(6) ......................................................................................................26

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page vi

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## I. INTRODUCTION

Plaintiff Brian Gaspar's First Amended Complaint ("FAC") illustrates why employees like him who are unaware of the workings of federal laws like the Fair Credit Reporting Act ("FCRA") are not (and should not be) tasked with investigating or reporting on them. In their initial motion to dismiss, Defendants Turn Technologies, Inc. ("Turn") and its CEO, Rahier Rahman ("Rahman" and with Turn, "Defendants"), explained in detail why each claim Plaintiff tried to allege in his initial complaint was deficient. Plaintiff sought to bring claims against his former employer for (1) violations of the FCRA, 15 U.S.C. §§ 1681 *et seq.*, and Washington Fair Credit Report Act ("WFCRA"), RCW 19.182 *et seq.*, (2) wrongful discharge in violation of public policy, and (3) breach of contract. Rather than challenge Turn's grounds for dismissal, Plaintiff amended his complaint in an attempt to plead around his deficiencies. Plaintiff tries to allege the same claims and a new claim for withholding of wages. But the FAC remains woefully deficient. Indeed, Plaintiff's amendments did nothing but inject implausible, conclusory, and conflicting allegations that the Court should disregard.

***First***, Plaintiff's FCRA and WFCRA claims are based on the allegation that he heard ***rumors*** Turn—a credit reporting agency ("CRA") that itself does background screening— and Rahman, on behalf of Turn, ran a background check on "at least two" employees, including Plaintiff. But the relevant section of the FCRA plainly and unambiguously applies only to employers who ***procure*** a background check from a third-party CRA. When, as here, an employer allegedly conducts its own internal investigation, the FCRA does not apply. Even putting this fatal deficiency aside, Plaintiff's FCRA claim fails because he does not allege facts supporting the requisite negligent or willful noncompliance. Each ground for dismissing Plaintiff's FCRA claim is likewise dispositive of his claim under the WFCRA.

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 1

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

***Second***, Plaintiff, who worked in product development and not regulatory compliance, took it upon himself to "investigate" if Defendants were running unlawful background checks. To support his wrongful discharge claim, Plaintiff contends that he was fired in retaliation for investigating and reporting Defendants' purportedly "non-consented" background checks. This claim fails for at least two reasons. First, Plaintiff has not alleged a clear public policy giving him the right to investigate potentially illegal conduct. He also does not plausibly allege Defendants' purported "misconduct" violates the letter or policy of any statute.

***Third***, regarding his contract claim, Plaintiff asserts that Defendants breached agreements to grant him shares of Turn's stock and a "$50,000 bonus . . . upon additional funding by investors." But Plaintiff fails to allege that both sides mutually agreed on all the essential terms of either agreement. And Plaintiff concedes that the "additional funding" triggering Turn's purported obligation to pay him a bonus occurred, at the earliest, ***after*** his termination.

***Fourth***, Plaintiff's wage withholding claim fails for multiple reasons: the FAC concedes that Turn did not owe Plaintiff a bonus while he was employed or when it terminated him, and shares of stock are not considered "wages." Also, Plaintiff fails to adequately allege that Defendants owed him any contractual or statutory obligation to pay him shares and a bonus, let alone that Turn withheld any payment willfully.

For each of these reasons, and as explained below, the Court should dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) in its entirety and with prejudice.

///

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## II. ALLEGATIONS IN THE COMPLAINT

### A.      Turn Hires Gaspar for Its Products Team

Turn is a startup that acts as a CRA performing background screening.[1] Rahman is Turn's CEO. FAC ¶ 10.[2] Turn allegedly hired Plaintiff in July 2021 as a vice president of product. *Id*. ¶ 14. Plaintiff claims Turn promoted him to head of product development in September 2021 and to chief product officer in March 2022. *Id*. ¶¶ 21-22. Plaintiff now implausibly alleges that his role on the product team somehow included "ensuring compliance with state and federal regulations, such as the [FCRA]." *Id.* ¶ 22.

According to Plaintiff, in July 2022, "in consideration for [these] two promotions," Defendants "agreed to pay [him] 3.5% stock of [Turn] effective immediately." *Id.* ¶ 23. Plaintiff also claims that in July 2022, Rahman "agreed to pay [him] a $50,000 bonus" "upon additional funding by investors." *Id*. ¶¶ 24-25. Plaintiff alleges that Turn received its "'next round of funding in or around December 2022'"—after Turn terminated him. *Id.* ¶ 73. Plaintiff does not attach to the FAC an offer letter or any document setting forth the terms of any alleged agreement.

Plaintiff also alleges that "[i]n his offer letter, [he] was promised a $65,000 raise 'upon a successful closing of the Series A'" and that, on information and belief, "Series A closed after his hire," FAC ¶¶ 17-18, but he never alleges that he did not receive this raise and does not assert any claim based on this allegation.

### B.      Turn Purportedly Runs "Illegal" Background Checks

Plaintiff claims another employee informed him in November 2022 that Rahman "had directed a non-consented consumer report … on an employee," *id.* ¶ 31, and that "[u]pon further inquiry, [Plaintiff] learned that [Rahman] had carried out other consumer

---

[1] *See* https://turn.ai. Turn is a Delaware corporation with its principal place of business in Chicago, Illinois. *Id.*

[2] "FAC" refers to Dkt. # 17. "¶" refers to paragraphs therein.

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

reports without securing consent" or providing notice, *id.* ¶¶ 35, 42.[3] Plaintiff allegedly discovered that "Defendants had performed an illegal background check on him on December 16, 2021." *Id.* ¶ 48. Plaintiff alleges that "[t]hese checks were performed by third party [CRAs]" that "procured the consumer reports for Defendants." *Id.* ¶¶ 36-37. However, Plaintiff does not allege that he or the person from whom he heard rumors ever saw any of these supposed consumer reports, that he ever heard Rahman direct anyone to run a background check, or that Rahman admitted to running a background check.

On November 18, 2022, Plaintiff allegedly told Rahman's chief of staff his "concerns about the consumer reports and Defendants [sic] practices that he believed violated state and federal credit reporting laws" and "reported that he had uncovered at least two non-consented criminal, employment, and motor vehicle checks Defendants had procured." *Id.* ¶¶ 54-55.

Defendants allegedly began to retaliate against Plaintiff. *Id.* ¶ 56. Plaintiff claims Defendants began "redirecting [his] work" to other employees and Rahman began "avoiding" him by instructing his direct reports. *Id.* ¶¶ 56-57. On November 23, 2022, Plaintiff purportedly "confronted [Rahman] about the changes in his employment," to which Rahman responded by telling him to "quit" and that "he knew about [Plaintiff's] investigation into Defendants' consumer reporting practices." *Id.* ¶ 61-62. Plaintiff alleges that Rahman told him that "he would be fired if he continued with his investigation of Defendants' consumer reporting practices or if he informed anybody, specifically the board of directors, of his findings." *Id.* ¶ 65.

On November 27, 2022, Plaintiff emailed Turn's board that "Turn has run background checks on employees and at least one outside individual without notice and their prior consent." *Id.* ¶ 67. On November 28, 2022, Defendants terminated Plaintiff. *Id.*

---

[3] Plaintiff alleges that "[a]ll of Defendant Rahman's actions were done on behalf of Defendant Turn." FAC ¶ 76.

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 4

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

¶ 69. Plaintiff contends that Defendants fired him "for investigating potentially illegal activity and internally reporting that activity." *Id.* ¶ 80. Plaintiff also contends that his "wrongful termination . . . caused [him] to lose wages. *Id.* ¶ 86.

### III. LEGAL STANDARD

"When a complaint fails to adequately state a claim, such deficiency should be 'exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Group14 Techs., Inc. v. Nexeon Ltd*., No. 22-cv-1354, 2023 WL 3599580, at *2 (W.D. Wash. May 23, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)) (Zilly, J). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[4] A complaint may be lacking for one of two reasons: "absence of a cognizable legal theory," or "insufficient facts under a cognizable legal claim." *Group14 Techs*., 2023 WL 3599580, at *2. A court construes the facts alleged "in the light most favorable to the" non-moving party only if those facts are "well-pleaded." *Irving Firemen's Relief & Ret. Fund v. Uber Techs.,* 998 F.3d 397, 403 (9th Cir. 2021). Mere "labels and conclusions," "naked assertions devoid of further factual enhancement," and "formulaic recitation[s] of the elements of a cause of action" do not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up).

///

---

[4] While Turn appreciates that the Court must accept the factual allegations in the FAC as true, for the record, most of those allegations are patently false. Turn will seek sanctions under Federal Rule 11 at the appropriate juncture.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV. ARGUMENT

**A.      Plaintiff's FCRA Claim Is Defective As A Matter of Law.**

### 1.      The FCRA is inapplicable as Plaintiff does not plausibly allege Defendants procured a consumer report from a CRA.

Plaintiff erroneously claims that Defendants did "an illegal background check on him," in violation of section 1681b(b)(2)(A) of the FCRA, FAC ¶¶ 48-50.[5] This statutory provision states that a "person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" "the consumer has authorized in writing … the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A). A "consumer report" is a "CRA-prepared report that a CRA issues to third parties." *Shaw v. Experian Info. Sols., Inc*., 891 F.3d 749, 755 n.3 (9th Cir. 2018) (citing 15 U.S.C. § 1681a(d)(1)).

Courts have repeatedly held that section 1681b(b)(2)(A)'s plain language only applies to employers who ***procure from a CRA*** a privately run background check. *E.g., Rubio-Delgado v. Aerotek, Inc*., No. 13-cv-3105, 2015 WL 3623627, at *1 (N.D. Cal. June 10, 2015). The Ninth Circuit confirmed as much in *Syed v. M-I, LLC*, 853 F.3d 492, 496 n.1 (9th Cir. 2017), holding that section 1681b(b)(2)(A) governs only the "procurement of consumer reports [from a CRA] 'for employment purposes with respect to any consumer.'" *See also* ¶ 5483 FTC Informal Staff Opinion Letter, Empl. Prac. Guide P 5483 ("[section 1681b(b)(2)(A)] applies to employers who procure consumer reports for employment purposes"). This holding makes sense as the verb "procure" means "to obtain (something), esp. by special effort or means." Procure, Black's Law Dictionary (11th ed. 2019).

---

[5] The text of both the FCRA and WFCRA makes clear the statutes confer standing only on a plaintiff whose own background report has been the subject of a violation. 15 U.S.C. § 1681*o; see also* RCWA § 19.182.020(b); *Wright v. JPMorgan Chase Bank,*, No. 16-cv-5155, 2017 WL 3623768, at *3 (E.D. Wash. Mar. 1, 2017) ("Ms. Wright does not have standing to contest any credit reporting violations regarding Mr. Malveto"). Thus, Plaintiff cannot assert a violation of the FCRA or WFCRA on behalf of other employees.

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Critically, however, no text in the FCRA prevents an employer from doing its own internal investigation. *See* 15 U.S.C. § 1681b(b)(2)(A); *see also* ¶ 5478 FTC Informal Staff Opinion Letter, Empl. Prac. Guide P 5478 n.1 ("We have also emphasized to employers that the FCRA does not apply to investigations they conduct themselves").

Defendants' previous motion to dismiss pointed out that Turn is itself a CRA that can rely on its own internal investigatory tools to assemble a background report on its employees, without procuring a consumer report from a third-party CRA. Dkt. 8 at 6. Thus, Turn's alleged conduct—running a background check on Plaintiff during his employment— could not have violated the FCRA. In response, the FAC attempts to plead around the "procurement" requirement by alleging that—although Turn does "employment screening"—it merely acts as an "intermediary between employers who want background checks … [and] third-party [CRAs] who actually perform these background checks" (FAC ¶¶ 15, 36), and that Rahman "carried out . . . [the alleged] consumer reports" on Plaintiff and other Turn employees through these third-party CRAs that "procured the consumer reports for Defendants," *id.* ¶¶ 35-37.

These conflicting and implausible allegations show only a flawed understanding of the FCRA. A CRA is defined as an entity that "engages in whole or in part in the practice of ***assembling*** . . . consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (emphasis added). Conversely, a data furnisher is "an entity that ***furnishes information*** relating to consumers to one or more [CRAs] for inclusion in a consumer report." 12 C.F.R. § 1022.41(c) (emphasis added). The FCRA regulates CRAs and furnishers independently, and they have distinct duties. *E.g.*, *Compare* 15 U.S.C. § 1681b, *with* 15 U.S.C. § 1681s-2.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

The FTC has confirmed that an "employment background screening company" like Turn "is considered a CRA."[6] CRAs generally gather information on consumers from a data furnisher's public records database (think LexisNexis) when assembling data for a consumer report. *E.g., Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963, 966 (W.D. Wis. 2004) ("In that capacity [as CRAs], defendants collect credit information furnished [to] them by other sources, generate consumer disclosures and consumer reports that are disseminated to creditors"); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 690 (N.D. Ga. 2012) (explaining that the CRA was "in the business of compiling individual consumer reports, including criminal background checks for employment purposes, from public records databases.").

Accepting Plaintiff's factual allegations as true, as "an entity" doing "employment screening" (FAC ¶ 15), Turn is a CRA. And Turn gathered "criminal, employment, and motor vehicles" information from third parties. *Id.* ¶ 31. Contrary to the legal conclusions set out in the FAC (¶¶ 36-38), the referenced "third parties" furnishing information to a CRA like Turn would be data furnishers, not additional CRAs. 12 C.F.R. § 1022.41(c). As a CRA itself, it is entirely implausible that Turn would procure consumer reports on its own employees from other third-party CRAs, when it could simply conduct its own internal investigation.[7]

All told, Plaintiff's allegations are implausible and contrary to law, and the Court need not accept his conclusory claim that Turn allegedly running his background check "included third parties furnishing consumer reports to Defendants." FAC ¶ 48.

---

[6] *See* FTC, *What Employment Background Screening Companies Need to Know About the Fair Credit Reporting Act*, https://www.ftc.gov/business-guidance/resources/what-employment-background-screening-companies-need-know-about-fair-credit-reporting-act.

[7] Plaintiff also strangely alleges that "Defendants never disclosed the [consumer] report to [him], in violation of 15 U.S.C. § 1681b(b)(2)(A)." FAC ¶ 50. Neither that section of the FCRA (nor any other section) requires an employer to provide a current employee with a background report. *See* 15 U.S.C. § 1681b(b)(2)(A).

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 8

1

## 2.     The FAC does not allege negligent or willful noncompliance.

"The FCRA does not impose strict liability." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). It imposes liability only when a person either negligently or willfully "fails to comply with any requirement" under the statute. 15 U.S.C. § 1681n(a); 15 U.S.C. § 1681*o*(a); *see also Banga v. Experian Info. Sols., Inc*., No. 09-cv-4867, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013) (same). "[T]he plaintiff's complaint must allege specific facts as to the defendant's mental state. . . . Merely stating that the violation was 'willful' or 'negligent' is insufficient." *Abbink v. Experian Info. Sols., Inc*., No. 19-cv-1257, 2019 WL 6838705, at *5 (C.D. Cal. Sept. 20, 2019). Even if Plaintiff had properly alleged Turn violated section 1681b(b)(2)(A), he has failed to allege facts to show a negligent or willful violation.

### a.     The FAC does not adequately allege a negligent violation.

The FAC lacks any factual allegations about Defendants possessing a negligent mental state. This alone is fatal to any claim for a negligent violation of the FCRA. *Abbink*, 2019 WL 6838705, at *5.

Moreover, no factual allegations in the FAC establish that Plaintiff sustained actual damages from the purported background check, as required to state a claim for a negligent violation of the FCRA. *See Shelton v. Hal Hays Constr., Inc*., No. 16-cv-360, 2016 WL 8904414, *4 (C.D. Cal. July 29, 2016) (citing 15 U.S.C. § 1681*o*). Actual damages under the FCRA include "out of pocket expenses" and "emotional distress and humiliation." *Id.* at *5.[8] Courts in the Ninth Circuit "routinely hold … that a plaintiff's failure to allege actual damages requires the dismissal of his claim for negligent violations of the FCRA." *Warr v.*

---

[8] "[I]nformational injury" based on the failure to provide proper disclosures and "invasion [] privacy and statutory rights" are "insufficient to [even] serve as the sort of concrete and particularized harm necessary for Article III standing." *Jordan v. Viceroy Hotel Mgmt., LLC*, No. 21-cv-1338, 2021 WL 2400957, at *2 (N.D. Cal. June 11, 2021) (quoting *Mansapit v. Deluxe Corp*., No. 19-cv-790, 2019 WL 2423423, at *1 (N.D. Cal. June 10, 2019).

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Cent. Garden & Pet Co.,* No. 20-cv-9405, 2021 WL 6275013, at *10 (N.D. Cal. Sept. 21, 2021) (collecting cases).

Plaintiff claims that Defendants fired him "for investigating potentially illegal activity and internally reporting" it, FAC ¶ 80, ***not*** because Turn had supposedly done "an illegal background check on him" nearly a year earlier, *id.* ¶ 48. Indeed, Plaintiff alleges that Defendants ***promoted*** him after they purportedly ran this background check. *Id.* ¶¶ 21, 48. Thus, the FAC's vague reference to "pecuniary losses resulting from the unlawful employment practices described . . . above" (*id.* at 11) does not allege plausible out-of-pocket expenses due to Defendants' alleged background check. *E.g.,* *Gadomski v. Patelco Credit Union,* No. 17-cv-695, 2020 WL 1433138, at *3 (E.D. Cal. Mar. 24, 2020) ("out-of-pocket expenses [we]re not sufficient to show actual damage" where not directly related to the alleged FCRA violation). And the FAC's conclusory request for "non-pecuniary losses" such as "emotional pain, suffering, distress, and loss of enjoyment of life," (*id.* at 11) does not suffice to allege emotional distress due to Defendants' background check. *E.g., Evans v. Equifax Info. Servs., LLC*, No. 23-cv-237, 2023 WL 4546429, *6 (D. Nev. July 14, 2023) (allegations that the plaintiff "'suffered emotional distress and mental anguish' and 'further suffered humiliation and embarrassment'" are "insufficient to establish actual damages under the FCRA") (collecting cases); *Smith v. One Nevada Credit Union*, No. 16-cv-2156, 2017 WL 2803169, at *4 (D. Nev. June 27, 2017) (dismissing FCRA claim where plaintiff alleged he "suffer[ed] mental and emotional distress as a result of [d]efendant's invasion of [p]laintiff's privacy," but offered "no specific facts about how [p]laintiff suffered those damages").

### b.     The FAC does not allege willful noncompliance.

The FAC also does not sufficiently allege a willful violation. Legal conclusions that the "employment practices complained of in the above paragraphs were intentional" (FAC ¶ 87) and Defendants "willfully and recklessly violated the FCRA" (*id.* ¶¶ 77-78) do not

satisfy Plaintiff's duty to plead specific facts about Defendants' mental state when it purportedly performed his background check. *Abbink*, 2019 WL 6838705, at *5; *see also Mnatsakanyan v. Goldsmith & Hull APC*, No. 12-cv-4358, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013) (dismissing claim where plaintiff failed to allege facts showing defendant's "state of mind" in procuring plaintiff's consumer report).

In addition, the FAC fails to allege facts to support an inference that Defendants acted willfully based on "reckless disregard of statutory duty" or conduct "known to violate [the FCRA]." *Wolf v. Carpenter, Hazlewood, Delgado & Bolen, LLP*, No. 22-cv-15233, 2023 WL 2552332, at *1 (9th Cir. Mar. 17, 2023) (quoting *Safeco Ins. Co. of Am. v. Burr* ("*Safeco*"), 551 U.S. 47, 56-57 (2007)). To constitute reckless disregard, the defendant's reading of the FCRA must have been "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." *Abbink*, 2019 WL 6838705, at *6 (quoting *Safeco*, 551 U.S. at 69-70); *see also Mitchell v. Winco Foods, LLC*, 379 F. Supp. 3d 1093, 1101 (D. Idaho 2019).

The FAC attempts to meet this standard by alleging that, on "information and belief, Defendants did not research the FCRA, interpret the FCRA, or adopt an interpretation of the FCRA before procuring background checks in violation of the FCRA." FAC ¶ 79. This is merely an impermissibly "[t]hreadbare recital[]" of the reckless disregard standard. *Iqbal*, 556 U.S. at 678. Besides, allegations based on "information and belief" are permitted only if the belief is "based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Fruci & Assocs., PS v. A10 Cap. LLC*, 510 F. Supp. 3d 962, 968 (W.D. Wash. 2020) (dismissing claim based on "information and belief" allegations unsupported by plausible factual allegations). Turn is a CRA. The idea that it did not research or interpret the FCRA is absurd—and contradictory. In fact, Plaintiff alleges that Turn tasked employees like him with "ensuring compliance with state and federal regulations, such as the [FCRA]." FAC ¶ 22. Plaintiff cannot have it

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

both ways. *Alvarado v. Aurora Loan Servs.*, No. SACV120524, 2012 WL 13019942, at *5 (C.D. Cal. July 3, 2012) ("A court may disregard and not accept as true any conflicting conclusory allegations").

Defendants' reading of section 1681b(b)(2)(A) of the FCRA as permitting Turn to investigate its employees internally without notice or consent is objectively reasonable. As noted above (at p. 6), courts and the FTC read section 1681b(b)(2)(A) the same. Under similar circumstances, courts have found that a plaintiff failed to allege a defendant acted willfully. *E.g.*, *Abbink*, 2019 WL 6838705, at *6 (plaintiff failed to plead a willful violation where he did not "cite any statutory language, case law, or any guidance from the [FTC] that renders Experian's reading of the FCRA 'objectively unreasonable'"); *Wolf*, 2023 WL 2552332, at *1 (similar); *Mitchell*, 379 F. Supp. 3d at 1102 (similar).

The FAC does not allege a violation of section 1681b(b)(2)(A) for all the reasons set forth above.

### B.      Plaintiff's WFCRA Claim Is Defective As A Matter of Law.

#### 1.      The WFCRA is inapplicable under the facts alleged.

The WFCRA, chapter 19.182.020(b) RCW, the analog to section 1681b(b)(2)(A), is inapplicable for the same reasons as the FCRA. Under the relevant section of the WFCRA, a "person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any employee unless the employee has received, at any time after the person became an employee, written notice that consumer reports may be used for employment purposes." RCWA § 19.182.020(b).

There is a dearth of cases discussing the WFCRA, and none interpreting the statutory provision at issue. "When construing a state statute, a federal court must apply that state's principles of statutory interpretation." *Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1339 (W.D. Wash. 2018). Washington courts look to "the plain meaning of the words used in [a] statute," giving "a nontechnical statutory term … its dictionary meaning." *State v.*

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 12

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Fjermestad*, 114 Wn.2d 828, 835 (1990). Moreover, "[f]ederal cases applying analogous federal law are persuasive authority in interpreting" state consumer protection statutes. *Robinson v. McReynolds*, 52 Wn. App. 635, 638 n.2 (1988); *see also Kinney v. Cook*, 159 Wn.2d 837, 843 (2007) ("federal case law gives us some useful guidance" as the Securities Act of Washington "is patterned after and restates in substantial part the language of the federal Securities Exchange Act of 1934").

As shown above, *supra* at pp. 5–6, courts and regulators have consistently concluded that section 1681b(b)(2)(A), which uses operative language similar to chapter 19.182.020 RCW, does not cover an employer that does an internal investigation without procuring a third-party consumer report from a CRA. The application of chapter 19.182.020 RCW likewise turns on the "procurement" of a consumer report from a CRA. Giving "procurement" its plain meaning, it is clear Plaintiff also has not, and cannot, plausibly allege that Turn engaged in conduct that violated the WFCRA.

> **2.      Plaintiff cannot establish the required elements to bring a civil action for a violation of the WFCRA.**

Plaintiff's WFCRA claim is deficient even if chapter 19.182.020 (b) RCW applies because he has not alleged the elements of the Consumer Protection Act (the "CPA"), as required to bring a civil action for a violation of the WFCRA. RCWA § 19.182.150. The FAC does not plead sufficient facts to satisfy at least two elements of a CPA claim: (1) an unfair or deceptive act or practice and (2) a causal link between the unfair or deceptive act and the alleged injury. *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) (quoting *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,* 162 Wn.2d 59, 73 (2007)).

First, Plaintiff has not alleged an unfair or deceptive practice as it cannot establish that Turn violated the WFCRA. *Supra* at 12-13.

Second, even assuming Turn did violate the WFCRA, Plaintiff did not, and cannot, allege causation. A plaintiff must allege a causal link between the unfair or deceptive act

and the injury suffered. *Minnick*, 683 F. Supp. 2d at 1186. Only a person "injured in his business or property by a violation" of the CPA "may bring a private action." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 792-93 (1986). Thus, a plaintiff must allege that, "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered" an injury to his business or property. *Indoor Billboard*, 162 Wn.2d at 83.

The FAC does not include any allegations establishing a causal link between Turn allegedly performing a background check on Plaintiff and any pecuniary harm.[9] Plaintiff's conclusory allegations of damages relate to firing him. *See supra* at 9-10. Thus, Plaintiff cannot allege that "but for" Turn's alleged violation of the WFCRA, he would not have suffered an injury. "CPA claims are commonly dismissed under similar circumstances where a plaintiff fails to allege injury and causation with any factual support." *Sherlock Invs.-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*, No. 20-cv-129, 2020 WL 4729066, at *7 (W.D. Wash. Apr. 7, 2020) (collecting cases).

Thus, the Court should dismiss Plaintiff's WFCRA claim.

### C.      Plaintiff Fails to Properly Allege Wrongful Discharge.

Like Plaintiff, employees in Washington generally work "at will, meaning they can quit or be fired for any reason." *Bye v. Augmenix, Inc*., No. 18-cv-1279, 2018 WL 5619029, at *2 (W.D. Wash. Oct. 30, 2018) (citing *Gardner v. Loomis Armored Inc*., 128 Wn.2d 931, 934-36 (1996)). The tort of wrongful termination is a "narrow" exception to the at-will doctrine. *Id*.; *Bott v. Rockwell Int'l*, 80 Wn. App. 326, 335 (1996). The exception "should be applied cautiously so as to not swallow the rule" that employers generally "can terminate

---

[9] Nonpecuniary harm such as "emotional distress damages are not compensable CPA injuries." *Steele v. Extendicare Health Servs.*, 607 F. Supp. 2d 1226, 1230 (W.D. Wash. 2009) (citing *White River Estates v. Hiltbruner*, 134 Wn.2d 761, 765 n. 1 (1998)).

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 14

[an] employment relationship at any time for any reason without having to explain their actions to a court." *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801-02 (2009).

To state a claim for wrongful discharge, "the plaintiff must *plead* … that his or her termination was motivated by reasons that contravene an important mandate of public policy." *Bye*, 2018 WL 5619029, at \*2 (quotation marks and citation omitted). "The question of what constitutes a clear mandate of public policy is one of law." *Dicomes v. State*, 113 Wn.2d 612, 617 (1989).

The Washington Supreme Court outlined four scenarios that implicate wrongful discharge: where an employee is fired for "refusing to commit an illegal act;" for "performing a public duty or obligation, such as serving jury duty;" for "exercising a legal right or privilege, such as filing [for] workers' compensation;" or for "reporting employer misconduct, *i.e.*, whistleblowing." *Gardner*, 128 Wn.2d at 936. A claim outside these scenarios may arise only if the plaintiff satisfies a four-part framework referred to as the "Perritt" test. *See Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723 (2018). The Perritt test has four factors: "(1) The plaintiffs must prove the existence of a clear public policy (the clarity element). (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element). (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element). (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element)." *Id*.

Plaintiff claims that Defendants "fired [him] for investigating potentially illegal activity and internally reporting that activity to Defendants." FAC ¶ 80. We address each theory below.

### 1. Plaintiff has not alleged a clear public policy granting him the right to investigate potential illegal conduct.

Plaintiff must satisfy the Perritt test because his wrongful discharge claim based on him "investigating potentially illegal activity" (FAC ¶ 80) does not fall into one of the four

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 15

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

scenarios enumerated above. *Supra* at 14–15. To meet the clarity requirement, he must allege that there exists a clear public policy "demonstrated in 'a constitutional, statutory, or regulatory provision or scheme.'" *Williams v. City of Bellevue*, No. 16-cv-1034, 2017 WL 4387590, at *8 (W.D. Wash. Oct. 3, 2017), *aff'd*, 740 F. App'x 148 (9th Cir. 2018) (quoting *Danny v. Laidlaw Transit Servs., Inc*., 165 Wn.2d 200, 207-08 (2008)). "The clarity requirement is strict, and 'plaintiff must establish that the public policy is clearly legislatively or judicially recognized.'" *Singleton v. Intellisist, Inc*., No. 17-cv-1712, 2018 WL 2113973, at *3 (W.D. Wash. May 8, 2018) (citation omitted). Courts are instructed to "proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." *Williams*, 2017 WL 4387590, at *8.

Instead of specifying a clear public policy affording employees the right to perform their own independent investigations into perceived illegal conduct, the FAC throws the proverbial spaghetti at the wall to see what sticks. Plaintiff vaguely alleges that his "actions furthered numerous public policies …. including laws prohibiting unfair trade practices, and protecting consumer privacy, and individual privacy, reputation, and character." FAC ¶ 81. Without citing any statutory test or providing a pinpoint citation to any section, article, or provision of any law, the FAC claims these policies are codified under the WFCRA, something called the "Credit Protection Act," the CPA, the Washington and federal constitutions, the Health Insurance Portability and Accountability Act ("HIPAA") and Washington's purported recent expansion of HIPAA. *Id*. ¶¶ 82-85. These erroneous, vague, conclusory, and nonsensical[10] legal conclusions cannot suffice to allege a clear public policy supporting his investigation.

---

[10] As one example of the truly absurd nature of Plaintiff's allegations, HIPAA applies only to "covered entities," meaning health care providers, health plans, and health care clearinghouses. 45 C.F.R. § 160.103. And it only regulates "protected health information" (or PHI). *Id*. Nothing of the sort is at issue here. As another example, Plaintiff wrongfully claims that "[u]nder Washington Consumer Protection Act, running consumer reports on people without their consent is a per se violation." *Id*. ¶¶ 83. But, the WFCRA does not require consent. The WFCRA authorizes an employer to procure a background report from

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 16

Our review of the laws that we can decipher from the FAC has not revealed any text that affords employees the right to perform their own independent investigations. This is no surprise as recognizing a policy allowing an employee to unilaterally decide to launch an internal investigation would undoubtedly lead to chaos and anarchy in the workplace. Because Plaintiff has failed to allege a clear mandate of public policy affording him the right to investigate potential misconduct, the FAC should be dismissed to the extent based on the theory Plaintiff was discharged for such activity. *E.g.*, *De Jong v. Great Wolf Resorts, Inc.,* No. 19-cv-5354, 2019 WL 2725536, at *5 (W.D. Wash. July 1, 2019) (granting motion to dismiss where the plaintiff failed "to identify the law or groups of laws from which he supposedly draws a clear public policy"); *Sheaffer v. Superior Tank Lines Nw. Div., LLC*, No. 19-cv-190, 2019 WL 2476636, at *4 (W.D. Wash. June 13, 2019) (dismissing claim where "[p]laintiff has failed to identify a clear expression of public policy" supporting his conduct).[11]

### 2.   Plaintiff has not, and cannot, plausibly allege that Defendants' alleged misconduct violated the letter or policy of any statute.

Plaintiff also alleges that Defendants terminated him in retaliation for reporting that Turn was "running background checks on employees without their consent in violation of the FCRA and WFCRA." FAC ¶¶ 2, 80. While this claim falls within a scenario that generally implicates wrongful discharge (whistleblowing), the inquiry doesn't end here.

"To state a claim for wrongful termination based on whistle-blowing, courts 'generally examine the degree of alleged employer wrongdoing, together with the reasonableness of the manner in which the employee reported . . . the alleged misconduct.'" *Bye*, 2018 WL 5619029, at *3 (quoting *Dicomes*, 782 P.2d at 1006). The employee must

---

a CRA if it provides "**written notice** that consumer reports may be used for employment purposes." RCWA § 19.182.020(b) (emphasis added).

[11] The clarity element is the sine qua non, and without it, a plaintiff naturally cannot satisfy the other elements of the "Perritt" test. *Supra* at p. 14–15 (the other elements require the existence of a clear public policy).

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

have "sought to further the public good, and not merely private or proprietary interests, in reporting the alleged wrongdoing.'" *Id.* (quoting *Dicomes*, 782 P.2d at 1008); *Keenan v. Allan*, 91 F.3d 1275, 1280 (9th Cir. 1996). In addition, the complaint must contain "allegations explaining how the misconduct Plaintiff reported violated the letter or policy of a specific law or regulation." *Bye*, 2018 WL 5619029, at *3.

Plaintiff's allegations do not support a whistleblowing claim. ***First***, Defendants' alleged level of wrongdoing is minimal: Plaintiff claims Defendants ran background checks on perhaps ***two*** Turn employees over the course of at least a year.[12] ***Second***, Plaintiff's actions in reporting the alleged misconduct were unreasonable. Plaintiff is on Turn's product development team, a role unrelated to the legal department or compliance.[13] His allegation that his job responsibilities "included ensuring compliance with state and federal regulations, such as the [FCRA]," FAC ¶ 22, belies common sense. Thus, it was unreasonable for Plaintiff to investigate and advise Turn on FCRA regulatory compliance. Yet when Rahman instructed Plaintiff to stand down, in an act of clear insubordination, Plaintiff reported his bogus claims—which were based on rumors, not personal knowledge—to Turn's board. These plainly unreasonable actions undercut his claim. *See, e.g.*, *Dicomes*, 113 Wn.2d at 624 (holding that "plaintiff has failed to state a cause of action for wrongful discharge under the public policy exception" where she provided "the budget data to [the board chair] in disregard of her superior's requests," compromising "the delicate working relationship between the [b]oard[] and [department director]") (cleaned up). ***Third***, the FAC does not allege facts supporting a plausible inference that Plaintiff was acting to further the public good, rather than his private interest. Plaintiff seemingly emailed Turn's

---

[12] Plaintiff allegedly reported on November 18, 2022 that Defendants ran background checks on "at least two" employees, including a background check purportedly run on him in December 2021. FAC ¶¶ 48, 55.

[13] Turn has a compliance team entirely separate from products. *See, e.g.,* https://turnhq.freshteam.com/jobs/IBOASDHrcOg2/compliance-associate-remote.

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

board because he was upset that Rahman was bypassing him with instructions—*i.e.*, the "treatment" Plaintiff "confronted" Rahman about. FAC ¶ 61. Thus, considering the first three relevant factors, Plaintiff's allegations do not justify applying Washington's limited public policy exception to the at-will doctrine. *E.g., Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 671 (1991) (holding "it does not appear that [the defendant's] actions rose to the level of wrongdoing that would support a tort of wrongful discharge in violation of public policy").

Plaintiff's claim fails for a separate, independent reason: he has not alleged facts showing how the reported conduct "violated the letter or policy of a specific law or regulation." *Bye*, 2018 WL 5619029, at *3. Plaintiff alleges that "he felt he had an obligation under the law to report what ***he believed*** was a violation of the FCRA." FAC ¶ 68 (emphasis added); *id.* ¶ 33. But "[i]t is not sufficient for [a] [p]laintiff to merely allege that she 'believed in good faith' that the conduct was 'improper, unlawful, and unethical.'" *Id.* Without a clear violation of the law, a plaintiff's "arguably good faith belief in the righteousness of her conduct is too tenuous a ground upon which to base a claim for wrongful discharge." *Turner v. Univ. of WA*, No. 05-cv-1575, 2007 WL 1655117, at * 3 (W.D. Wash. June 4, 2007).

And Plaintiff does not adequately allege that Defendants' conduct violated the letter or policy of any law. Plaintiff alleges that Turn's purported unconsented background checks "violated New York Fair Chance Act (FCA), N.Y.C. Administrative Code § 8-107(11-a)" (FAC ¶ 44), but that local ordinance applies only to employers in New York City, and, in any event, the ordinance does not require consent for a background report, *see* N.Y.C. Administrative Code § 8-107(11-a (c)). Nor does Plaintiff allege that Turn took an adverse action against an employee "based on a criminal conviction, or pending arrest or criminal accusation," as required for the ordinance to apply. N.Y.C. Administrative Code § 8-107(11-a (c)). Plaintiff alleges that "[a]t least one of the[] reports violated the FCRA §

1681q because they were obtained under false pretenses," FAC ¶ 45, but he alleges no facts to support this bare legal conclusion. In addition, none of the facts alleged suggest that Defendants disclosed Plaintiff's social security number or any other personal information in violation of consumer privacy laws or that Defendants did anything to damage "consumer reputation." FAC ¶¶ 40, 85. Also, Plaintiff's conclusion that Turn violated the WFCRA and FCRA (FAC ¶¶ 47, 50) is implausible and inadequately alleged for the reasons already explained (*supra* at 5–14), including because neither statute is aimed at regulating the conduct of employers like Turn conducting their own internal investigations. Thus, the Court should dismiss Plaintiff's wrongful discharge claim for failure to sufficiently allege a violation of the letter or policy of any law. *E.g.*, *Bye*, 2018 WL 5619029, at *3; *Bott*, 80 Wn. App. at 336 (upholding dismissal of wrongful discharge claim where plaintiff "was unable to demonstrate that [defendant] had violated the law, a policy, or even a regulation in regards to its accounting practices").

### 3.      Any Wrongful Discharge Claim Against Rahman Fails.

Plaintiff cannot state a wrongful discharge claim against Rahman individually. Though the Washington Supreme Court has not decided if plaintiffs can assert a wrongful discharge tort against their supervisors, other courts have emphatically held that they cannot. *E.g.*, *Miklosy v. Regents of Univ. of Cal.*, 188 P.3d 629, 644 (Cal. 2008); *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 569 (Ill. 1998). As the Eighth Circuit observed, this view is "more persuasive" because the tort of wrongful discharge "requires the existence of an employer-employee relationship" and an individual "can only be the agent by which *an employer* commits that tort." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 767 F.3d 744, 752 (8th Cir. 2014).[14]

---

[14] Defendants acknowledge that one court in the Eastern District of Washington predicted that the Washington Supreme Court would permit wrongful discharge claims against "individual supervisors or managers who participated in the wrongful firing of the employee," *Blackman v. Omak Sch. Dist.*, No. 18-cv-338, 2019 WL 2396569, at *3 (E.D.

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 20

### D.      Plaintiff Fails to Allege A Breach of Contract Claim[15]

To state a breach of contract claim under Washington law, "a plaintiff must allege: (1) the existence of a valid contract that imposes a duty, (2) the duty was breached, and (3) the plaintiff was damaged as a result." *Casterlow-Bey v. eBay, Inc.*, No. 17-cv-5687, 2017 WL 6733724, at *6 (W.D. Wash. Dec. 29, 2017) (citing *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712-13 (1995)).[16] "[A] contract requires mutual assent to its essential terms in order to be binding." *Lee v. Intelius Inc.*, 737 F.3d 1254, 1259 (9th Cir. 2013); *Roth v. CNR Prod., Inc.*, No. 20-cv-256, 2020 WL 2334144, at *3 (W.D. Wash. May 11, 2020). Additionally "the parties must assent to sufficiently definite terms." *Cats v. NextAlarm.com, Inc.*, No. 08-cv-1096, 2009 WL 577590, at *4 (W.D. Wash. Mar. 5, 2009). If contract terms are so "'indefinite that a court cannot … fix exactly the legal liability of the parties,' there cannot be an enforceable agreement." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 (2004) (citation omitted).

Plaintiff attempts to plead a breach of contract claim based on allegations that (1) "Defendants never provided [him] with the stock grant he earned" and (2) "[Turn] never provided [him] with the bonus that was agreed to and approved." FAC ¶ 74.  But the FAC fails to allege that a valid contract entitling Plaintiff to stock shares or a bonus exists. It thus fails to plausibly allege a breach of contract claim.

***First***, in his initial complaint, Plaintiff alleged that, in July 2022, Turn orally "agreed to pay [him] an additional 2.5% ***stock option***, which gave [him] a total of 3.5% shares of

---

Wash. June 6, 2019), but respectfully maintain that *Blackman* is not persuasive when considering the significant contrary authority.

[15] Plaintiff alleges this claim against Turn only. FAC ¶ 2.

[16] Illinois law bears a significant relationship to Plaintiff's employment and the parties because Turn is in Chicago, Illinois. However, because no actual conflict exists between the states' laws as to the issues addressed here, Washington law presumptively applies. *GM Northrup Corp. v. Massachusetts Bay Ins. Co.*, --- F. Supp. 3d ----, 2023 WL 2538021, at *4 (W.D. Wash. Mar. 16, 2023) (citing *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692 (2007)).

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the company." Dkt. 1 ¶ 24 (emphasis added). Turn identified the deficiencies in the argument in its original motion to dismiss, including that Plaintiff did not allege material terms (*e.g.* exercise price) necessary for an award of stock options. Dkt. 8 at 21-22. In response, Plaintiff did not try to cure these defects. In a total about-face, he now claims that instead of granting a stock option, Turn orally agreed to pay him straight out "3.5% stock of [Turn] effective immediately." FAC ¶ 23.[17]

The FAC does not identify the essential terms of a stock grant agreement or that Plaintiff and Defendants mutually agreed to those essential terms, such as the class of stock from which Turn would source the payment (*i.e.*, preferred or common stock) and whether the 3.5% stock meant shares in all of Turn's stock or just a subset. *See* FAC ¶ 23. Without mutual assent to these essential terms, Turn's alleged oral promise is unenforceable. *E.g.*, *Weinstein v. Katapult Grp., Inc.*, No. 21-cv-05175, 2022 WL 137633, at *3 (N.D. Cal. Jan. 14, 2022) (relying on *Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316, 325 (S.D.N.Y. 2001) ("there is no manifestation of mutual assent to the material terms of any stock option arrangement, including: how many options might be granted of ***what class of stock***") (emphasis added)); *see also Christian v. TransPerfect Glob.*, Inc., No. 17-cv-5554, 2018 WL 4571674, at *7 (S.D.N.Y. Sept. 24, 2018) ("In the case of a promise for equity in a business, the promise must convey … *the **source of payment**"*) (emphasis added); *Cf. Amin v. Carousel Foods of Am., Inc.*, 269 A.D.2d 342, 342 (N.Y. App. Div. 2000) (rejecting claim for specific performance of agreement "ambiguous as to what type or class of stock the plaintiff was to receive").

***Second,*** Plaintiff alleges that Rahman purportedly "agreed to pay [him] a $50,000 bonus" that "was to be paid upon additional funding by investors." FAC ¶¶ 24-25. Used in

---

[17] Admissions in complaints that have been "amended or withdrawn" are no longer conclusive, but are still admissions, and courts may still consider them. *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996).

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

this context, "upon" means "when" or "after."[18] Washington law is clear that words such as "when" and "after" suggest a "conditional intent, not a promise." *Tacoma Northpark, LLC v. NW, LLC,* 123 Wn. App. 73, 80 (2004). Thus, as alleged, "additional funding by investors" is a condition precedent to any contractual obligation to pay Plaintiff a $50,000 bonus. FAC ¶ 25. Plaintiff alleges that Turn received an unspecified amount of funding "in or around December 2022," *after* his termination. *Id.* ¶¶ 69, 73. These facts do not plausibly infer that all "conditions to the defendant's performance have been satisfied." *Kubik v. Intrexon, Inc*., No. 11-cv-0972, 2011 WL 13232587, at *1 (W.D. Wash. Sept. 22, 2011). Attempting to avoid this issue, Plaintiff now insists that he was never "informed that his $50,000 bonus was contingent on him remaining employed when the company got funded." FAC ¶ 30. This is a material term; without it, there is no enforceable contract. *Roth*, 2020 WL 2334144, at *3. Thus, Plaintiff's contract claim for a $50,000 bonus is not only defective for failing to allege that a condition precedent occurred, it also fails for indefiniteness. *Keystone Land & Dev. Co*, 152 Wn.2d at 177–78.

### E.   Plaintiff Fails To Allege A Claim For Withholding of Wages

Plaintiff claims that "Defendants' wrongful termination of [him] caused [him] to lose wages in violation of RCW 49.52 *et seq.* and RCW 49.48 *et seq.*" and Defendants are liable under 49.52.050 and 49.52.070 for withholding of wages. FAC ¶¶ 86.[19] Under RCW § 49.48.010, "[w]hen any employee shall cease to work for an employer …, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period." RCW § 49.48.010. RCW § 49.52.050 states that an employer who "[w]illfully and with intent to deprive the employee of any part of his or her wages, [pays] an employee a lower wage than the wage such employer is obligated to pay such employee

---

[18] *See, e.g.*, *Upon*, Merriam-Webster.com dictionary, https://www.merriam-webster.com/dictionary/upon.

[19] Plaintiff does not identify any specific provision of RCW 49.48.

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

by any statute, ordinance, or contract" is guilty of a misdemeanor. RCW § 49.52.050(2). RCW 49.52.070 provides a civil remedy for double damages against the employer. *Id*. § 49.52.070. Although not entirely clear, it appears Plaintiff alleges Defendants wrongfully withheld his stock grant and bonus. FAC ¶ 74. Plaintiff's withholding claim fails for several reasons.

 ***First***, regarding withholding claims for the alleged failure to pay a bonus, Plaintiff has pled himself out of court. Turn could not have violated section RCW § 49.48.010 and RCW § 49.52.050 because the FAC alleges that the bonus was contingent "upon additional funding" (FAC ¶ 25), which allegedly did not occur until after his termination. *Id*. ¶¶ 69, 73. Accordingly, the alleged wages could not have been "due" to Plaintiff when he "cease[d] to work for" Turn under RCW 49.48.010, nor could Turn have paid Plaintiff a "lower wage than the wage [Turn] [wa]s obligated to pay [him]" during his employment in violation of RCW 49.52.050. Plaintiff is thus not entitled to damages.

 ***Second***, RCW § 49.48.010 is inapplicable because stocks are not "wages" for the purpose of the statute. RCW § 49.48.010 expressly defines wages as "compensation due to an employee by reason of employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value." RCW § 49.48.082(8) (adopting definition of wages in RCW § 49.46.010). Stock is not a "legal tender" or a bank check. *See In re Est. of Lowe*, 191 Wn. App. 216, 233 (2015) (quoting Black's Law Dictionary) ("legal tender" is "[t]he money (bills and coins) approved in a country for the payment of debts, the purchase of goods, and other exchanges for value"); *see also Coulombe v. Total Renal Care Holdings, Inc*., No. 06-cv-504, 2007 WL 1367601, *7 n. 8 (W.D. Wash. May 4, 2007), *aff'd*, 298 F. App'x 617 (9th Cir. 2008) ( "[s]tock options do not qualify as wages payable in legal tender") (quotation marks and citation omitted).

 ***Third***, Plaintiff's withholding claims under RCW § 49.52.050 for the stocks and bonus fall with his contract claim. As noted above, to state a wage withholding claim under

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

this statute, Plaintiff must allege that Defendants withheld wages that they were required to pay by "statute, ordinance, or contract." RCW § 49.52.050(2); *see also Klein v. Demopulos*, No. 09-cv-1342, 2010 WL 11500147, at *3 (W.D. Wash. Jan. 8, 2010). Plaintiff does not attempt to invoke any statute or ordinance. And for the reasons explained above (at 21-24), he has not adequately alleged that he had a contractual right to a stock grant or bonus. Thus, his claim under RCW § 49.52.050 fails for this additional reason. *E.g.*, *Linden v. X2 Biosystems, Inc.*, No. 17-cv-966, 2019 WL 13240852, at *5 (W.D. Wash. Jan. 25, 2019) ("having found that Plaintiffs' contract claims fail, their withholding claims also fail").

**Fourth**, Plaintiff's withholding claims under RCW § 49.52.050 regarding the stocks and bonus fail because the FAC does not adequately allege willfulness. As shown above, to state a withholding claim under this statute, the plaintiff must allege facts to establish that the nonpayment of wages was willful. RCW § 49.52.050(2); *see also Walters v. Superior Tank Lines Nw. Div., LLC*, No. 19-cv-0191, 2019 WL 1923053, at *2 (W.D. Wash. Apr. 30, 2019). "[F]ormulaic recitations of the elements of a willful withholding of wages claim," such as allegations that a "defendant willfully withheld wages that caused [the] plaintiffs' alleged damages," are insufficient. *Id.*; *see also, e.g.*, *Brandt v. Beadle*, No. 19-cv-6159, 2020 WL 4597262, at *2 (W.D. Wash. Aug. 11, 2020) (allegation that "Defendants have refused to pay Plaintiff the [wages] owed to him under [an] Employment Agreement" is insufficient). Here, as in *Walters* and *Brandt*, Plaintiff's formulaic, conclusory allegation that "[t]he unlawful employment practices complained of in the above paragraphs were intentional" (FAC ¶ 87) is deficient . Besides, there can naturally be no willful nonpayment where, as here, "there is a bona fide dispute as to whether the employer is obligated to pay the amounts in question." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002).

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

## V. CONCLUSION

2   For the foregoing reasons, Defendants respectfully request that the Court dismiss

3   Plaintiff's FAC under Federal Rule 12(b)(6) in its entirety and with prejudice.

4   ### VI. LCR 7(e)(2) CERTIFICATION

5   I certify that the foregoing memorandum contains 8,399 words in compliance with

6   the Local Civil Rules.

7   DATED this 16th day of October 2023.

8

9                               McNAUL EBEL NAWROT & HELGREN PLLC

10  By: _s/ Anna F. Cavnar_
        Anna F. Cavnar, WSBA No. 54413
11      Kyle C. Hansen, WSBA No. 59688
        600 University Street, Suite 2700
12      Seattle, Washington 98101
        Phone:  (206) 467-1816
13      Fax:  (206) 624-5128
        Email:  acavnar@mcnaul.com
14              khansen@mcnaul.com

15

16                              MAYER BROWN LLP

17  By: _s/ Elisabeth M. Anderson_
        Charles E. Harris, II, admitted _pro hac vice_
18      71 South Wacker Drive
        Chicago, Illinois 60606-4637
19      Tel:  (312) 782-0600
        Email: charris@mayerbrown.com
20
        Elisabeth M. Anderson, admitted _pro hac vice_
21      333 S. Grand Ave 47th Floor
        Los Angeles, California 90071
22      Tel:  (213) 229-9500
        Email:  eanderson@mayerbrown.com
23
        _Attorneys for Defendants Turn Technologies, Inc.,_
24      _and Rahier Rahman_

25

26

DEFS.' MOT. TO DISMISS AM. COMPL.
(Case No. 2:23-cv-01274-TSZ) – Page 26