UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN GASPAR,

        Plaintiff,

v.

TURN TECHNOLOGIES INC; and RAHIER RAHMAN,

        Defendants.

C23-1274 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Defendants' Motion to Dismiss First Amended Complaint, docket no. 20, is GRANTED in part and DENIED in part as follows.

    **(a)** **Fair Credit Reporting Act:** Plaintiff has pleaded facts which, taken as true, state a claim for relief under the Fair Credit Reporting Act ("FCRA"). Although Defendants maintain that Defendant Turn Technologies Inc. ("Turn") is a credit reporting agency ("CRA") "that can rely on its own internal investigatory tools to assemble a background report on its employees, without procuring a consumer report from a third-party CRA," see Defs.' Mot. at 7 (docket no. 20), Plaintiff alleges that Turn "does not perform the background checks itself, but instead outsources the work." First Amended Compl. ("FAC") at ¶ 15 (docket no. 17). Plaintiff further alleges that the background checks or consumer reports were performed by third-party CRAs, who "procured the consumer reports for Defendants." FAC at ¶¶ 36–37. In addition, by alleging that Defendants did not provide any disclosure before procuring a consumer report, see FAC at ¶¶ 42, 49, Plaintiff alleged a willful violation of the FCRA, see 15 U.S.C. § 1681b(b)(2)(A) (requiring disclosure and authorization before a consumer report is procured); see

MINUTE ORDER - 1

also Syed v. M-I, LLC, 853 F.3d 492, 500–06 (9th Cir. 2017) (holding that a willful violation of the FCRA occurs when a consumer report is procured without a stand-alone disclosure).

      **(b)**    **Washington Fair Credit Reporting Act:** Defendants contend that Plaintiff's claim under the Washington Fair Credit Reporting Act ("WFCRA") should be dismissed for the same reasons that Plaintiff's FCRA claim should be dismissed. Defs.' Mot. at 12–13. In light, however, of the Court's ruling concerning Plaintiff's FCRA claim, Defendants' motion to dismiss Plaintiff's WFCRA claim for this reason likewise lacks merit. Defendants further contend that Plaintiff's WFCRA claim should be dismissed because Plaintiff did not allege "a causal link between the unfair or deceptive act and the injury suffered" as required to state a claim under the Washington Consumer Protection Act ("CPA"). Defs.' Mot at 13–14. Plaintiff counters that "[a] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any employee unless the employee has received . . . written notice that consumer reports may be used for employment purposes." Pl.'s Resp. at 18 (docket no. 22) (citing RCW § 19.182.020(2)(b)). Plaintiff points out that the "WFCRA allows for statutory damages if a violation is willful." Pl.'s Resp. at 18 (citing RCW § 18.182.150 ("[W]here there has been willful failure to comply with any requirement imposed under this chapter, the consumer shall be awarded actual damages, a monetary penalty of one thousand dollars, and the costs of the action together with reasonable attorneys' fees as determined by the court.")). Because Plaintiff has pleaded that Defendants willfully violated the WFCRA by not providing any notice before procuring a consumer report, Plaintiff has pleaded sufficient facts to state a claim for a violation of the CPA.

      **(c)**    **Wrongful Discharge:** In Washington, one scenario that implicates the wrongful discharge tort is "when employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing." Bye v. Augmenix, Inc., C18-1279, 2018 WL 5619029, at *2 (W.D. Wash. Oct. 30, 2018) (citation and footnote omitted). "To state a claim for wrongful [discharge] based on whistle-blowing, courts 'generally examine the degree of alleged employer wrongdoing, together with the reasonableness of the manner in which the employee reported, or attempted to remedy, the alleged misconduct.'" Id. at *3 (citing Dicomes v. State, 113 Wn.2d 612, 619, 782 P.2d 1002 (1989)). "An employer's reported misconduct can involve 'either a violation of the letter or a policy of [a] law, so long as the employee sought to further the public good, and not merely private or proprietary interests, in reporting the alleged wrongdoing.'" Id. (alteration in original).

MINUTE ORDER - 2

Plaintiff alleges that "around twelve hours after [he] blew the whistle on Defendants, Defendant Rahman terminated his employment." FAC at ¶ 69. Defendants contend that "Plaintiff's allegations do not support a whistleblowing claim" for four reasons, see Defs.' Mot at 18-20, and the Court addresses each of Defendants' arguments. First, Defendants argue that their "alleged level of wrongdoing is minimal" because "Plaintiff claims Defendants ran background checks on perhaps two Turn employees over the course of at least a year." Defs.' Mot. at 18. Plaintiff, however, alleges that he discovered "at least two non-consented" consumer reports procured by Defendants and was generally investigating Defendants' consumer reporting practices. FAC at ¶¶ 35, 54, 55, 62. Second, Defendants maintain that Plaintiff's job responsibilities did not include ensuring compliance with the law and that it was therefore unreasonable for Plaintiff to investigate Defendants' conduct. Defs.' Mot. at 18. Plaintiff, however, alleges his role as Chief Product Officer included ensuring compliance with the law. FAC at ¶ 22. Defendants' first two arguments are factual disputes, and the Court accepts Plaintiff's allegations as true for purposes of Defendants' motion to dismiss. Moreover, Defendants cite to no case supporting their arguments that a wrongful discharge claim should be dismissed based on the degree of the alleged employer wrongdoing or the reasonableness of the manner in which the employee reported the alleged misconduct. See Dicomes, 113 Wn.2d at 623–24, 782 P.2d 1002, 1006 (1989) (determining, on summary judgment, that the plaintiff used unreasonable means under the circumstances when reporting an employer's alleged misconduct). Third, contrary to Defendants' argument that Plaintiff "does not allege facts supporting a plausible inference that Plaintiff was acting to further the public good, rather than his private interest," see Defs.' Mot. at 18, Plaintiff alleges that Defendants "retaliated against him for engaging in protected activity furthering Washington public policies and whistleblowing against Defendants['] conduct that . . . firmly violates public policy." FAC at ¶ 89. Plaintiff further alleges that "Defendants retaliated and took adverse actions against [Plaintiff] for his protected activity. These adverse actions include wrongfully terminating [Plaintiff]'s employment for his whistleblowing activity in violation of firmly established public policies and violated Washington's tort of wrongful discharge in violation of public policy." FAC at ¶ 91. Furthermore, Defendants' authority does not support their argument that Plaintiff's wrongful discharge claim should be dismissed. See Farnam v. CRISTA Ministries, 116 Wn.2d 659, 807 P.2d 830 (1991) (on review of a motion for judgment notwithstanding the verdict, the court determined in part that the defendant's actions did not rise to a level of wrongdoing constituting a violation of a clear mandate of public policy). The Court concludes that Plaintiff's allegations are sufficient to survive a motion to dismiss. See Karastetter v. King Cnty. Corr. Guild, 193 Wn.2d 672, 685–86, 444 P.3d 1185 (2019) ("Even assuming a positive statement of subjective intent to further the public good is required, we construe pleadings to do substantial justice, and parties may clarify initial pleadings in the

MINUTE ORDER - 3

course of summary judgment proceedings."). Fourth, Defendants argue that Plaintiff "has not alleged facts showing how the reported conduct 'violated the letter or policy of a specific law or regulation.'" Defs.' Mot. at 19 (citation omitted). In light, however, of the Court's ruling concerning Plaintiff's FCRA claim and WFCRA claim, Plaintiff alleges that Defendants violated the letter of a specific law.

Finally, with respect to Defendant Rahman, Defendants argue that "Plaintiff cannot state a wrongful discharge claim against Rahman individually." Defs.' Mot. at 20. In support of this argument, Defendants cite to Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 188 P.3d 629 (2008), Buckner v. Atl. Plant Maint., Inc., 182 Ill. 2d 12, 694 N.E.2d 565 (1998), and Chave Lavagnino v. Mountain Educ. Training, Inc., 767 F.3d 744, 752 (8th Cir. 2014). Defs.' Mot at 20. Defendants also acknowledge that "the Eastern District of Washington predicted that the Washington Supreme Court would permit wrongful discharge claims against 'individual supervisors or managers who participated in the firing of the employee.'" Defs.' Mot. at 20 n.14 (citing Blackman v. Omak Sch. Dist., No. 18-cv-338, 2019 WL 2396569, at *3 (E.D. Wash. June 6, 2019)). The Court agrees with the Blackman Court and concludes that Plaintiff's claim against Defendant Rahman individually should not be dismissed at this time.

**(d)** **Breach of Contract:** To state a claim for breach of contract under Washington law, "a plaintiff must allege: (1) the existence of a valid contract that imposes a duty, (2) the duty was breached, and (3) the plaintiff was damaged as a result." See Casterlow-Bey v. eBay, Inc., No. 3:17-cv-05687, 2017 WL 6733724, at *6 (W.D. Wash. Dec. 29, 2017) (citation omitted). Plaintiff alleges that, in consideration for two promotions and additional responsibilities, Defendants agreed to pay him 3.5% shares of Turn stock effective immediately. FAC at ¶ 23. Plaintiff further alleges that he was told that the 3.5% shares were "approved" or "already allocated" to him. FAC at ¶¶ 27–28. Plaintiff, however, generally alleges that Defendants agreed to pay him 3.5% shares of Turn stock without alleging the type of stock. For example, Plaintiff does not allege whether the 3.5% shares of Turn stock are stock options, common stock, or preferred stock. Thus, Plaintiff's breach of contract claim as to the 3.5% shares of Turn stock is dismissed without prejudice and with leave to amend. See Weinstein v. Katapult Grp., Inc., No. CV-5175, 2022 WL 137633, at *3 (N.D. Cal. Jan. 14, 2022) (noting that "[a] contract offering an option award must indicate the 'material terms of any stock option arrangement, including: how many options might be granted of what class of stock; when the options might be granted; the option term; the exercise price; and the expiration date" and dismissing a breach of contract claim for indefiniteness because essential terms were missing from the face of the complaint (citations omitted)).

MINUTE ORDER - 4

      Plaintiff also alleges that, in consideration for the two promotions, Defendant Rahman agreed to pay him a $50,000 bonus, which was to be paid upon additional funding by investors. FAC at ¶¶ 24–25. According to Plaintiff, Turn received its pledge for the next round of funding in or around December 2022. FAC at ¶¶ 29, 73. Although Plaintiff's employment ended on November 28, 2022, see FAC at ¶ 69, Plaintiff alleges that he was not informed that the $50,000 bonus was contingent on him remaining employed when Turn received the additional funding. FAC at ¶ 30. Taking Plaintiff's allegations as true, the Court concludes that Plaintiff has pleaded facts that state a claim for breach of contract as to the $50,000 bonus.

      **(e)** **Withholding of Wages:** Under RCW § 49.48.010(2), "[w]hen an employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due to him or her on account of his or her employment shall be paid to him or her at the end of the established pay period[.]" Under RCW 49.52.050(2), an employer who "[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" is guilty of a misdemeanor. An employee has a civil remedy under RCW 49.52.070 when an employee violates RCW 49.52.050(2). As Defendants point out, a withholding of wages claim requires allegations of willfulness. See Walters v. Superior Tank Lines Nw. Div., LLC, No. C19-191, 2019 WL 1923053, at *2 (W.D. Wash. Apr. 30, 2019) (noting that withholding of wages is "willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute" and dismissing a withholding of wages claim because the plaintiffs merely alleged that the defendant refused to pay bonuses); Brandt v. Beadle, No. C19-6159, 2020 WL 4597262, at *2 (W.D. Wash. Aug. 11, 2020) (dismissing a withholding of wages claim because the plaintiff merely alleged that the defendants "refused to pay Plaintiff the severance obligation owed to him under the Employment Agreement"); see also Kubik v. Intrexon, Inc., No. C11-972, 2011 WL 13232587, at *2 (W.D. Wash. Sept. 22, 2011) (dismissing a withholding of wages claim where the plaintiff alleged that he was wrongfully discharged to avoid paying incentive compensation but did "not present[] a single fact to support" that claim). Here, although Plaintiff alleges that Defendants' wrongful termination caused him to lose wages and those actions were intentional, see FAC at ¶¶ 86–87, the Court concludes that those allegations are insufficient to state a withholding of wages claim. Plaintiff does not allege that Defendants wrongfully terminated him in order to avoid paying the $50,000 bonus and the 3.5% shares of Turn stock. Moreover, even if Plaintiff made such an allegation, Plaintiff did not plead a single fact to support such an allegation. Thus, with respect to the $50,000 bonus and the 3.5% shares of Turn stock, Plaintiff's withholding of wages claim is dismissed without prejudice and with leave to amend.

MINUTE ORDER - 5

  (2) Plaintiff shall file any amended complaint on or before January 5, 2024. Any answer or response is due within fourteen (14) days after the amended complaint is filed. <u>See</u> Fed. R. Civ. P. 15(a)(3).

  (3) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

  Dated this 22nd day of December, 2023.

<u>Ravi Subramanian</u><br>
Clerk<br><br>
<u>s/Laurie Cuaresma</u><br>
Deputy Clerk

MINUTE ORDER - 6