UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN GASPAR,

                Plaintiff,

     v.

TURN TECHNOLOGIES INC; and
RAHIER RAHMAN,

                Defendants.

C23-1274 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Defendants' partial motion to dismiss second amended complaint, docket no. 33, is GRANTED in part and DENIED in part as follows.

    **(a)**     **Breach of Contract**: Defendants Turn Technologies, Inc. ("Turn") and Rahier Rahman argue that Plaintiff fails to state a breach of contract claim for (1) shares of Turn stock, and (2) a $65,000 raise. Defs.' Mot. at 6 (docket no. 33).

        As to the shares of Turn stock, Plaintiff alleges that his offer letter awarded him rights to shares of Turn common stock and that Defendants agreed to pay him "3.5% stock of Turn Technologies effective immediately." Pl.'s Sec. Am. Compl. ("SAC") at ¶¶ 24 & 26 (docket no. 31). Plaintiff also alleges that Defendants' Board of Directors informed him that the Board had approved the stock grant and that no vesting period attached to the stock grant. Id. at ¶¶ 32–36. Plaintiff's offer letter states that common stock allocation is subject to "performance targets tied to its grant" and a "vesting schedule which will be mutually agreed upon between [Plaintiff] and Turn's CEO and subject to approval by Turn's Board of Directors." Pl.'s Offer Letter at 2 (docket no. 9-1). Taking Plaintiff's allegations that Defendants informed him the 3.5% shares of Turn stock was awarded to him and approved, Plaintiff has sufficiently alleged a breach of contract claim as to the shares of Turn stock. Thus, the motion to dismiss Plaintiff's breach of contract claim as to the shares of Turn stock is DENIED.

MINUTE ORDER - 1

As to the $65,000 raise, Plaintiff alleges that "[i]n his offer letter, [he] was promised a $65,000 raise 'upon a successful closing of the Series A'" and that "[u]pon information and belief, [he] believes the Series A closed after his hire." SAC at ¶¶ 17 & 18. Defendants contend that Plaintiff improperly alleges on "information and belief" that "the Series A closed after [Plaintiff's] hire" because such information is not "peculiarly within the possession and control" of Defendants. Defs.' Mot. at 8 (citing Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017)). Although Plaintiff alleges that he was told by board members that he was to receive a bonus and shares of Turn stock, see SAC at ¶¶ 31–36, Plaintiff does not allege that his job responsibilities included knowing the details of Turn's financing. The Court concludes that Plaintiff, who was eventually promoted to Chief Product Officer, can plead on information and belief that the Series A closed after his hire. Soo Park, 851 F.3d at 928 (concluding that the plaintiff sufficiently pled facts to state a plausible claim for civil conspiracy where the plaintiff "alleged facts that are 'suggestive' of an agreement to engage in 'illegal conduct' because many of the relevant facts were known only to the defendant). Thus, Defendants' motion to dismiss Plaintiff's breach of contract claim as to the $65,000 raise is DENIED.

**(b)** **Withholding of Wages**: Defendants argue that Plaintiff fails to state a withholding of wages claim for (1) a $50,000 bonus, (2) shares of Turn stock, and (3) a $65,000 raise. Defs.' Mot. at 10–14.

As to the $50,000 bonus, Defendants argue that "Plaintiff pleads himself out of court by alleging his right to a bonus did not accrue until *after* his employment ended." Defs.' Mot. at 11 (emphasis in original). Although Plaintiff alleges that he was to receive a $50,000 bonus upon Turn receiving additional funding from investors and that Turn received the additional funding after his employment ended, see SAC at ¶¶ 29–32, 37–38, 77, & 81, Plaintiff also alleges that he was not informed that his bonus was contingent on him remaining employed when Turn "got funded." SAC at ¶ 38. Taking Plaintiff's allegations as true, Plaintiff has pleaded facts that state a claim for breach of contract as to the $50,000 bonus. Defendants also argue that "Plaintiff once again fails to adequately allege willfulness." Defs.' Mot. at 11. Plaintiff, however, alleges that "Defendants willfully withheld wages" by "failing to pay the stocks, bonus, and raise." Id. at ¶ 96. Plaintiff has sufficiently pleaded "willfulness" for purposes of his withholding of wages claims.[1] See Backman v. Nw. Pub. Ctr., 147 Wn. App. 791, 796, 197 P.3d 1187 (2008) (noting that "[d]etermining willfulness is a question of fact reviewed for substantial evidence" (citation omitted)). Thus,

---

[1] The Court also concludes that Plaintiff has sufficiently pled willfulness for purposes of his withholding of wages claim as to the $65,000 raise.

MINUTE ORDER - 2

Defendants' motion to dismiss Plaintiff's withholding of wages claim as to the $50,000 bonus is DENIED.

As to the shares of Turn stock, Defendants argue that Plaintiff's claim fails as a matter of law because "RCW 49.48 defines wages as 'compensation due to an employee by reason of employment, payable in ***legal tender*** of the United States or checks on banks convertible into cash on demand at full face value.'" Defs.' Mot. at 12–13 (citation omitted) (emphasis in original).  Plaintiff counters that "Washington courts broadly define 'wages' to include 'any *compensation* due by reason of employment.'" Pl.'s Resp. at 13–14 (docket no. 34) (emphasis in original) (quoting McGinnity v. AutoNation, Inc., 149 Wn. App. 277, 284, 202 P.3d 1009 (2009)).[2]  According to Plaintiff, shares of stock are a form of "wages" under the relevant statutes.  Pl.'s Resp. at 14 (citing Gladstone Tech., Partners, LLC v. Dahl, 222 F. Supp. 3d 432, 439 (E.D. Pa. 2016), and Schachter v. Citigroup, Inc., 47 Cal. 4th 610, 619, 218 P.3d 262 (2009)).[3]  "Under RCW

---

[2] Although the McGinnity court stated that the term "wages" is defined broadly as "compensation due to an employee by reason of employment," the McGinnity court went on to state that "if the employee gets the money on account of having been employed, then the money is wages in the sense of 'compensation by reason of employment.'" McGinnity, 149 Wn. App. at 284 (emphasis added).  In addition, the McGinnity court concluded "that unpaid benefits constitute compensation due by reason of employment" and thus "the arbitrator neither adopted an erroneous rule of law nor mistakenly applied the law" when "awarding attorney fees to the class under RCW 49.48.030." Id.  In other words, the McGinnity court did not determine whether shares of stock constitute wages under RCW 49.48 and RCW 49.52.  Thus, McGinnity does not support Plaintiff's argument that shares of stock constitute wages under RCW 49.48.010 and RCW 49.52.050.

[3] In Gladstone, the plaintiff alleged that the defendant never issued 30% shares of stock as promised pursuant to a service agreement between the plaintiff and the defendant.  222 F. Supp. 3d at 436–37.  The defendant allegedly sent the plaintiff an IRS Form K-1, which listed $240,000 as the plaintiff's share of income from the defendant.  Id. at 437.  The plaintiff alleged that $240,000 figure represented only a 22.5% share of stock and brought withholding of wages claims under RCW 49.48.010 and RCW 49.52.050.  Id.  The Gladstone court concluded that the plaintiff's withholding of wages claim was "sufficiently pled because it meets the notice pleading standard set forth by Federal Rule of Procedure 8." Id. at 438.  Specifically, the Gladstone court held that the plaintiff's allegations that the defendant "withheld or diverted a portion of his wages" and that the defendant "acted willfully and with intent to deprive him of his wages by paying him a 'lower wage' than they were obligated to under the service agreement" provided the defendant with "fair notice" of the plaintiff's claim.  Id. at 439.
    In Schachter, the defendant "offered a voluntary employee incentive compensation plan that provides employees with shares of restricted company stock at a reduced price in lieu of a portion of that employee's annual cash compensation." 47 Cal. 4th at 613.  The plaintiffs agreed "that, should they resign or be terminated for cause before the restricted shares of stock vest, they would forfeit the stock and the portion of cash compensation they directed to be paid in the form of the restricted stock." Id.  The Supreme Court of California considered "whether the incentive plan's forfeiture provision violates Labor Code sections 201, 202, and 219, which provide that employees be paid all earned, unpaid wages upon

MINUTE ORDER - 3

49.46.[010](7), incorporated by RCW 49.48.082, 'wage' means 'compensation due to an employee by reason of employment, payable in legal tender,' or 'checks on banks convertible into cash.'" Ranko v. Gulf Marine Prods. Co. Inc., 2020 WL 5747819, at *4 (W.D. Wash. Sept. 25, 2020). "Although RCW 49.52 does not define 'wage,' Washington courts have looked to related statutes for guidance." Id. (citations omitted). The Court concludes that shares of stock are not "wages" under RCW 49.48.010 and RCW 49.52.050 because shares of stock are not "payable in legal tender" or "checks on banks convertible into cash." See id. Thus, Defendants' motion to dismiss Plaintiff's withholding of wages claim as to the shares of Turn stock is GRANTED with prejudice and without leave to amend.

As to the $65,000 raise, Defendants argue that Plaintiff's claim falls with Plaintiff's breach of contract claim. Defs.' Mot. at 14 (citation omitted). Because the Court concludes that Plaintiff's breach of contract claim as to the $65,000 raise should not be dismissed, the Court also concludes that Plaintiff's withholding of wages claim should not be dismissed. Thus, Defendants' motion to dismiss Plaintiff's withholding of wages claim as to the $65,000 raise is DENIED.

(2)  The parties are DIRECTED to comply with the terms of the Order Regarding Initial Disclosures, Joint Status Report, and Early Settlement, docket no. 3, and the Court hereby resets the following deadlines:

| | |
|---|---|
| Conference pursuant to Fed. R. Civ. P. 26(f) | April 12, 2024 |
| Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) | April 26, 2024 |
| Combined Joint Status Report and Discovery Plan | April 26, 2024 |

(3)  The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 29th day of March, 2024.

Ravi Subramanian
Clerk

s/Laurie Cuaresma
Deputy Clerk

---

termination or resignation and prohibit agreements that purport to circumvent that requirement." Id. Schachter did not involve a withholding of wages claim under Washington law.
    The Court concludes that Gladstone and Schachter are not persuasive authority.

MINUTE ORDER - 4